**MALDONADO et al.,**

v.

**OCHSNER et al.**

Civil Action No. 04–2635.

United States District Court, E.D. Louisiana.

March 24, 2006.

Andre Brian Burvant, Oreck, Bradley, Crighton, Adams & Chase, New Orleans, LA, Elizabeth J. Cabraser, Lieff, Cabraser, et al, San Francisco, CA, Sidney A. Backstrom, Scruggs Law Firm, Oxford, MS, for Maldonado.

David George Radlauer, Aimee M. Quirk, Sarah B. Belter, Thomas A. Casey, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, LA, for Ochsner.

*ORDER AND REASONS*

FELDMAN, District Judge.

Before the Court is plaintiffs' Motion for Class Certification. For the reasons that follow, the motion is DENIED.

*Background*

Ochsner Clinic Foundation is a non-profit corporation. *See* 26 U.S.C. § 501(c)(3). Ochsner receives tax exemptions under § 501(c)(3) and LSA–R.S. 47:287.501. The plaintiffs are uninsured patients who received medical care from Ochsner and were then billed for their care. Their grievance is that Ochsner charges uninsured patients undiscounted rates for their medical services, but offers discounts to patients who are health plan members, or are covered by private insurance, Medicare, and Medicaid. Plaintiffs further assert that Ochsner engages in abusive collection practices against uninsured patients. The plaintiffs claim that Ochsner's policies violate, among other things, an agreement between Ochsner and the State of Louisiana that was created when Ochsner accepted its tax exemptions as a charitable organization.

The plaintiffs sued Ochsner and the American Hospital Association in state court, for breach of contract, third party breach of contract, breach of the duty of good faith and fair dealing, violations of the Louisiana Unfair Trade Practices and Consumer Protection Law, unjust enrichment/constructive trust, civil conspiracy/concert of action, and aiding and abetting. The defendants removed, and this Court denied a motion to remand because the Louisiana statute upon which the plaintiffs rely implicates an interpretation of federal law. All parties eventually agreed to dismiss AHA as a defendant, thereby eliminating the conspiracy and aiding and abetting causes of action.

The plaintiffs now seek to certify their remaining claims under Rule 23(b)(2) or, alternatively, Rule 23(b)(3) of the Federal Rules of Civil Procedure, as a class action composed of: "all persons who received any form of health care treatment and were charged an undiscounted amount for the services at Ochsner from September 1, 1994 through the date of commencement of class notice or entry of judgment and who were uninsured at the time of treatment."

I.

Parties seeking class certification must satisfy the four well-known threshold require-

ments of Rule 23(a), and also the requirements of either Rule 23(b)(1), (2), or (3). *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). This Court is instructed to "conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class." *Bell Atl. Corp. v. AT&T Corp.,* 339 F.3d 294, 301 (5th Cir.2003) (quoting *O'Sullivan v. Countrywide Home Loans, Inc.,* 319 F.3d 732, 738 (5th Cir.2003) (internal quotations omitted)). "The party seeking certification ... bears the burden of establishing that the requirements of Rule 23 have been met." *Id.* (citing *O'Sullivan,* 319 F.3d at 737–38). Although whether an inquiry into the merits of pleaded claims should be permissible has been hotly debated:

> [i]n ruling upon a motion for class certification, courts treat the substantive allegations contained in the plaintiffs' complaint as true. The issue is not whether the plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met. The court may look past the pleadings to the record and any other completed discovery to make a determination as to the class certification issue.

*In re Am. Commercial Lines, LLC,* Nos. Civ.A. 00–252, Civ.A. 00–2967, Civ.A. 00–3147, 2002 WL 1066743, at *2 (E.D.La. May 28, 2002).

## II.

Rule 23(a) requires numerosity, commonality, typicality, and adequacy of representation. Fed.R.Civ.P. 23(a). The plaintiffs must satisfy each of these four threshold requirements for class certification, and they have done so.

### A. *Numerosity*

Numerosity requires that the class be so large "that joinder of all members is impracticable." Fed.R.Civ.P. 23(a). In their motion for class certification, the plaintiffs estimate that the class consists of over 1,000 members. Ochsner estimates the number of class members to be 39,000. A class of this size clearly satisfies the numerosity requirement. *See, e.g., Bertulli v. Indep. Ass'n of Cont'l Pilots,* 242 F.3d 290, 296 (5th Cir.2001)

(class of 1700 fulfills numerosity requirement).

### B. *Commonality*

Commonality requires "at least one issue whose resolution will affect all or a significant number of the putative class members." *Stewart v. Winter,* 669 F.2d 328, 335 (5th Cir.1982). "The threshold of commonality is not high." *Bertulli,* 242 F.3d at 296–97 (internal quotations omitted). Moreover:

> [t]he interests and claims of the various plaintiffs need not be identical. Rather, the commonality test is met when there is at least one issue whose resolution will affect all or a significant number of the putative class members. The fact that some of the plaintiffs may have different claims, or claims that may require individualized analysis, will not defeat commonality.

*In re Am. Commercial,* 2002 WL 1066743, at *8.

The third party breach of contract claim rests entirely on interpretation of the consequences of accepting a tax exemption. If benefitting by the tax exemption creates a contract, and the patients are third-party beneficiaries, then every member of the class can be affected. If tax exempt status does not create a contract, or the patients are not third-party beneficiaries, every member of the class again shares a common attribute. Therefore, given the low threshold of commonality, this requirement is satisfied.

### C. *Typicality*

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a). The claims of plaintiffs Soignet and Eiswirth are typical of the claims of the class members. The fact that Soignet has only partially paid his bill is typical of the class, as is the fact that Eiswirth has not paid any of his bill. Eighty-three percent of the members of the class have not paid anything; seventeen percent have paid all or some part of their bills. Further, the fact that some members may have paid all or none of their bills does not destroy the fact that the plaintiffs' claimed

harm is the mere *charging* of discriminatory rates.

█ Maldonado's claim, however, is not typical of the claims of other members of the class. Maldonado has a pending state court suit, in which she is seeking indemnification for the cost of her treatment at Ochsner. If Maldonado's bills are in fact paid for her, she no longer possesses the same interests as other members of the class: she no longer will owe anything, even though she will have paid nothing. Maldonado, therefore, does not satisfy the typicality requirement.[1]

### D. *Adequacy of Representation*

Similarly, Maldonado is not an adequate class representative. "The adequacy inquiry under Rule 23(a)(4)," *Amchem* teaches, "serves to uncover conflicts of interest between named parties and the class they seek to represent." 521 U.S. at 625, 117 S.Ct. 2231 *(citing Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 157–58 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). It requires "a sharing of interests between class representatives and absentees." *See In re Am. Commercial,* 2002 WL 1066743, at *9. If Maldonado recovers in her state court case, she would no longer share the interests of other class members regarding the rate the hospital charges to uninsured patients.

But again, Soignet and Eiswirth are adequate representatives. They clearly share the interests of the class they seek to represent.

### III.

Rule 23(b) creates three different types of class actions in 23(b)(1), 23(b)(2), and 23(b)(3). The plaintiffs need only satisfy the requirements of one. *See Amchem,* 521 U.S. at 614, 117 S.Ct. 2231. The plaintiffs urge certification under either Rule 23(b)(2) or Rule 23(b)(3), not Rule 23(b)(1). It is at this point that they do not succeed.

### A. *Rule 23(b)(2)*

Certification under Rule 23(b)(2), the claim for elementary injunctive relief, is appropriate if:

> the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Fed.R.Civ.Pro. 23(b)(2). Rule 23(b)(2) classes require that: (1) the class members must have been harmed in essentially the same way; and (2) injunctive relief *predominates* over any damages sought.[2] Further, the requested injunction must leave no open questions:

> Rule 65(d) requires injunctions to be specific. Every order granting an injunction must be specific in its terms and must describe in reasonable detail the act or acts that are enjoined. . . . This requirement of specificity and reasonable detail, based in part on notions of basic fairness, ensures that individuals against whom an injunction is directed receive explicit notice of the precise conduct that is outlawed.

*Ala. Nursing Home Ass'n v. Harris,* 617 F.2d 385, 387–88 (5th Cir.1980) (internal citations omitted).

█ The requested injunction in this case does not fulfill the specificity requirement. The plaintiffs seek an injunction

> ordering Defendant Ochsner to cease and desist: charging the Plaintiffs and the Class the highest and full undiscounted cost of medical care; charging the Plaintiffs and the Class a higher amount for medical services than its insured patients for the same services; and utilizing aggressive, abusive, and harassing collection practices to collect outstanding grossly in-

---

1. Even if Maldonado does not satisfy the typicality requirement, this flaw is not fatal to class certification. Maldonado can be terminated as a named plaintiff; the other named plaintiffs, Eiswirth and Soignet, are sufficient to represent the interests of the class.

2. In a recent split decision, this Court was reversed on a Rule (b)(2) issue, which seems, however, to have left the predominance issue relatively unresolved. *In re Monumental Life Ins. Co.,* 365 F.3d 408 (5th Cir.2004).

flated medical debt from the Plaintiffs and the Class.

The plaintiffs further

seek a prospective Order from the Court, requiring Defendant Ochsner: to provide mutually affordable medical care to the Plaintiffs and the Class; to charge the Plaintiffs and the Class no more for medical services than it charges its insured patients, and to cease its attempts to collect outstanding medical debts from the Plaintiffs and the Class until its [sic] has complied with a 180–day waiting period and attempted in good faith to settle such outstanding debt with the Plaintiffs and the Class through a graduated payment plan or other means.

Most of the terms in the injunction are unclear, making Ochsner's potential compliance problematic, and placing it in potential financial distress at a time when this community is short of hospitals, technicians, and medical staff because of Hurricane Katrina. It is unclear whether plaintiffs merely seek to receive a discount, or whether the requested injunction requires that the plaintiffs be charged the same amount as the insured patients. Further, if plaintiffs seek the latter, compliance with such an order would be impractical because there is not just one standard insured rate.

Similarly, the injunction's prohibition against "harassing collection practices" is equally vague. In their briefs, the plaintiffs fail to specify what practices qualify as abusive, aggressive, and harassing. However, during oral argument, the plaintiffs merely observed that Ochsner's collection practices are abusive because the hospital seeks payment from the uninsureds for the full charge-master rate.

Going on, the requested injunction vaguely seeks to require Ochsner "to provide mutually affordable medical care" to the plaintiffs and the class. The plaintiffs fail to define what will be mutually affordable medical care; they fail to provide any quantifiable standard; they have no recommendation about who will make such determinations.

Finally, the prospective injunction would prohibit Ochsner from collecting medical debts from uninsured patients during a 180 day waiting period.

Plaintiffs, given an opportunity to clarify their equitable demands, requested that Ochsner lower its "amount charged to uninsured patients to a reasonable rate considering what all other patient groups pay— because contracts signed by the patients require it and Ochsner's not-for-profit status is relevant to such a decision." That does nothing to clarify the uncertain scope of such an injunction. Plaintiffs want uninsured patients to pay a reasonable rate; however, what qualifies as a reasonable rate and who will make this determination still remain unresolved.[3]

■ Even if this Court were able to somehow cure the vagueness problem, the plaintiffs' standing to seek such an injunction is in jeopardy. When the majority of the class does not face future harm, certification under Rule 23(b)(2) is inappropriate. *See Bolin v. Sears Roebuck & Co.,* 231 F.3d 970, 978 (5th Cir.2000) (most of class did not face threat of future harm, and therefore, court denied class certification under Rule 23(b)(2)); *see also City of Los Angeles v. Lyons,* 461 U.S. 95, 109, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) ("If Lyons has made no showing that he is realistically threatened by a repetition of his experience of October, 1976, then he has not met the requirements for seeking an injunction in federal court. . . .").

■ The plaintiffs have not established that any member of the class is likely to suffer an Ochsner-imposed injury in the future. Indeed, insofar as the injunction seeks to prevent Ochsner from charging undiscounted rates, it would be almost impossible to prove that there was a likelihood of such future harm because both sides agree that Ochsner now provides an automatic 35% discount to uninsured patients. The named plaintiffs are especially unlikely to suffer future harm: Soignet now has insurance that encourages him to use another hospital; Eis-

**3.** In their reply brief, the plaintiffs seem to have abandoned their grievance of abusive collection practices.

wirth lost confidence in one of her doctors and now uses another hospital; Maldonado, the most likely to use Ochsner in the future, has already been found to be an inadequate representative. "Most of the class consists of individuals who do not face further harm ... [from Ochsner's actions] ... These plaintiffs have nothing to gain from an injunction." *Bolin,* 231 F.3d at 978. Therefore, since the "declaratory relief [the plaintiffs] seek only serves to facilitate the award of damages," Rule (b)(2) certification is inappropriate. *Id.*

The only part of the injunction that might still be relevant to Soignet and Eiswirth involves the issue of harassing collection practices. But that, as earlier explained, suffers from substantial specificity issues, and the plaintiffs do not even mention injunctive relief against abusive collection practices in their reply brief. Their notable silence equates with a sigh of weakness.

Even if the plaintiffs' injunction can be said to be specific enough and even if the plaintiffs have standing, this case is plainly not the type appropriate for Rule (b)(2) status. "Actions for class-wide injunctive or declaratory relief are intended for (b)(2) certification precisely because they involve uniform group remedies. Such relief may often be awarded without requiring a specific or time-consuming inquiry into the varying circumstances and merits of each class member's individual case." *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 414 (5th Cir. 1998). The incidental monetary damages:

> should at least be capable of computation by means of objective standards and not dependant in any significant way on the intangible, subjective differences of each class member's circumstances. Liability for incidental damages should not require additional hearings to resolve the disparate merits of each individual's case; it should neither introduce new and substantial legal or factual issues, nor entail complex individualized determinations.

*Id.* at 415.

■ The plaintiffs seek "all economic, monetary, actual, consequential, and compensatory damages caused by [Ochsner's] conduct," and these damages require such intensely individualized inquiries that they overwhelm any dimension of injunctive relief. The plaintiffs' breach of contract claim asserts that Ochsner charged "unfair, unreasonable" prices. The third party breach of contract claim asserts that Ochsner charged "excessive, undiscounted" prices. In order to compensate the plaintiffs for unreasonable, unfair, and excessive amounts, there must be some understanding of what a reasonable and fair amount is. However, "the reasonableness of a particular medical fee depends on what is customary in a community for similar [services and procedures]." *Travelers Ins. Co. v. Reliable Home Health Care, Inc.,* 857 So.2d 1039, 1043 (La.Ct.App. 2003) (quoting *Adler v. Hosp. Serv. Ass'n,* 278 So.2d 177 (La.Ct.App.1973)); *see also Spencer v. West,* 126 So.2d 423, 428 (La.Ct. App.1960). This class of plaintiffs admittedly received thousands of different treatments and services. Therefore, to determine whether a plaintiff was charged an unreasonable amount, the Court would have to determine what qualifies as a reasonable amount for each of the thousands of different procedures. Because determining each plaintiff's entitlement to relief and damages would require a "specific or time-consuming inquiry into the varying circumstances and merits of each class member's individual case," Rule (b)(2) certification is inappropriate. *See Allison,* 151 F.3d at 414.

Plaintiffs seem to suggest that all of Ochsner's undiscounted charges are per se unreasonable, and that they can be reduced across the board by a set percentage in order to pronounce them (arbitrarily?) reasonable. The plaintiffs do not draw attention to any authority for such a sweeping proposal. Instead, they are apparently admitting the futility of determining reasonable prices, expressing a willingness, or hope, to just generalize the number. Whether this solution will decrease the charges to below the rates charged to insured patients will depend on the percentage, but it will not depend in any way on the actual "reasonableness" of the prices being charged. The plaintiffs do not suggest that Ochsner is systematically raising its prices for uninsured patients by a set percentage.

Thus, the Court is not persuaded that systematically decreasing the hospital's prices for uninsured patients by a set percentage will fix their problem. Without an individualized inquiry into the reasonableness of prices for the thousands of diverse and dissimilar medical charges, the plaintiffs cannot be awarded appropriate monetary damages in the class setting. Any such inquiry will clearly "require additional hearings" and "entail complex individualized determinations." *Allison*, 151 F.3d at 415. It will necessitate "the gathering of subjective evidence." *In re Monumental*, 365 F.3d at 419.

The Court finds that Rule (b)(2) certification is inappropriate.

### B. *Rule 23(b)(3)*

Rule 23(b)(3) demands that the class satisfy predominance and superiority. *See Amchem*, 521 U.S. at 615, 117 S.Ct. 2231. The Rule announces a subset of four inquiries that define predominance and superiority:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3).

Much attention has focused on the tension between the truly individualized nature of the claims made as contrasted with Rule 23(b)(3)'s insistence upon predominance. Predominance is "more demanding than the commonality requirement of Rule 23(a)." *Bell Atl.*, 339 F.3d at 301–02. It calls for an imbalance that tilts to the class. It requires "that questions common to the class members predominate over questions affecting only individual members." *Id.* at 301. The *Bell Atlantic* Court takes a utilitarian approach:

> [d]etermining whether the plaintiffs can clear the predominance hurdle set by Rule 23(b)(3) . . . requires [courts] to consider "how a trial on the merits would be conducted if a class were certified." . . . This, in turn, "entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class," a process that ultimately "prevents the class from degenerating into a series of individual trials."

*Id.* at 302 (internal citations omitted).

And superiority requires that class actions "be superior to other available methods for the fair and efficient adjudication of the controversy." *Amchem*, 521 U.S. at 615, 117 S.Ct. 2231 (internal quotations omitted). Superiority seems not as demanding a part of the equation. So let's look at predominance first.

"A class should be certified on a claim-by-claim basis." *Bertulli*, 242 F.3d at 295. The Court must study each claim separately to decide "whether common issues predominate and whether the class action is the superior method to resolve the controversy [because the Rule] requires an understanding of the relevant claims, defenses, facts, and substantive law presented in the case." *In re Am. Commercial*, 2002 WL 1066743, at *12 (citing *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir.1996)).

#### 1. *Third Party Breach of Contract*

The plaintiffs' third party breach of contract claim is anchored to the theory that Ochsner, by accepting federal tax exemptions and, thus, by virtue of state law, has entered into an:

> [a]greement with the State of Louisiana that in return for a substantial income, franchise and property tax exemptions valued in the millions of dollars it would: operate exclusively for charitable purposes; provide emergency room medical care to the Plaintiffs and the Class without regard to their ability to pay for such medical care; provide mutually affordable medical care to the Plaintiffs and the Class; not to pursue outstanding medical debt from the Plaintiffs and the Class by engaging in aggressive, abusive, and humiliating collection practices; and not pro-

vide financial inurement to private individuals or entities.

The plaintiffs assert that they are third party beneficiaries of this agreement. They charge that Ochsner breached the agreement by:

failing to provide emergency room medical care to the Plaintiffs and the Class without regard to their ability to pay for such medical care; charging the Plaintiffs and the Class excessive, undiscounted cost of medical care; charging the Plaintiffs and the Class significantly more than its insured patients for the same medical services; failing to use its net assets and revenues in the millions of dollars to provide mutually affordable medical care to the Plaintiffs and the Class; utilizing aggressive, abusive and humiliating collection practices to collect such inflated and unreasonable medical debt from the Plaintiffs and the Class; providing substantial discounts off the gross charges to private insurance companies, its Board of Directors, and entities affiliated with Defendant Ochsner; and allowing noncharitable for-profit entities to derive a profit from use of its tax-exempt hospitals.

As to this Count, there are, admittedly, unmistakable common issues. The issue of whether Ochsner's acceptance of tax exemptions forms a contract with the State of Louisiana applies to all plaintiffs. *See, e.g., Klay v. Humana, Inc.,* 382 F.3d 1241, 1255 (11th Cir.2004) ("Common issues of fact and law predominate if they 'ha[ve] a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief.' "). Similarly, the issue of whether the plaintiffs are third party beneficiaries of this contract applies to all plaintiffs. Whether any of the actions the plaintiffs accuse Ochsner of would constitute a breach of that agreement is also an issue that applies to all plaintiffs.

■ But, however common the issues, they do not predominate over individual issues. Even if it were decided that a contract exists, and the plaintiffs are third party beneficiaries, the class action would then devolve into thousands of smaller idiosyncratic trials because the issue of breach, as well as damages, is not common to the class. For instance, since Ochsner admittedly does not charge any standard rates to insured patients, to determine if Ochsner breached its agreement with Louisiana, the Court would have to consider what each plaintiff was charged for a particular procedure and whether this rate was "excessive" or "not mutually affordable," and, therefore, in violation of Ochsner's eleemosynary status. *See O'Sullivan et al. v. Countrywide Home Loans,* 319 F.3d 732, 741 (5th Cir.2003) (Rule (b)(3) certification denied for failure to satisfy predominance requirement when defendant did not provide identical goods and services—in type or quantity—to each plaintiff). Further, for the plaintiffs who received emergency medical care, the Court would have to conduct an individualized inquiry for each patient to determine whether that patient received care without regard to ability to pay. And it is patently clear that the determination of whether Ochsner engaged in abusive collection practices is unique to each individual.

■ This is not a case where one set of operative facts establishes a defendant's liability. *See In re Am. Commercial,* 2002 WL 1066743, at *13. "Where, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3)." *Klay,* 382 F.3d at 1255 (citing *Perez v. Metabolife Int'l, Inc.,* 218 F.R.D. 262, 273 (S.D.Fla.2003)). Therefore, certification of plaintiff's third party breach of contract claim is inappropriate under Rule 23(b)(3).

Even if individual issues did not predominate, the class action mechanism in this setting is not the superior way to proceed. Counsel agree that the claim of contract-by-virtue of tax exemption is novel and seems without case support.[4] Where "[t]he plaintiffs' claims are based on a new theory of liability," the Court cannot "presume that all

---

4. *Cf. Cook v. Ochsner Found. Hosp.,* 319 F.Supp. 603 (E.D.La.1970).

or even any plaintiffs will pursue legal remedies. Nor can a court make a superiority determination based on such speculation." *Castano,* 84 F.3d at 747–48. However much the plaintiffs might attempt to characterize this as a simple breach of contract claim, the suggestion that tax exemptions create agreements with third party beneficiaries is indeed novel, and, therefore, seems particularly incompatible with class certification.

### a. *Breach of Contract*

This breach of contract claim, which is not related to the third party breach claim, relies upon a form contract that plaintiffs say they were all required to sign before receiving treatment at Ochsner. The contract reads:

> [t]hat portion of the bill not covered by an approved insurance is due weekly while in the hospital and in full upon discharge. If an assignment of insurance made to the hospital and the insurance is billed, any amount not covered by insurance is due immediately upon receipt of payment from the insurance company, or if not paid by the insurance company within 30 days, I will make payment in full and look to my insurance company for reimbursement. I understand that the hospital will not accept responsibility for collecting my insurance or negotiating a settlement on a disputed claim. I hereby guarantee payment of all hospital expenses of the above mentioned patient. Payments are due weekly while in the hospital, and in full upon discharge.

Since the form contract does not specify a price, the plaintiffs contend that Louisiana law requires Ochsner to charge fair and reasonable rates to the plaintiffs.

■■■ However, even if all of the plaintiffs signed the same form contract, which Ochsner disputes, individual issues still predominate. This is not a case where one interpretation of the form contract will decide liability and damages. *See, e.g., Smilow v. Sw. Bell Mobile Sys., Inc.,* 323 F.3d 32, 42 (1st Cir.2003). Specifically, interpretation of the form contract here requires the Court to read in a reasonable price as to each patient's contract. A reasonable price for medical services depends on the services and procedures provided. *See, e.g., Travelers,* 857 So.2d at 1043 (La.Ct.App.2003); *Spencer,* 126 So.2d at 428. To determine what is a reasonable price in an open price contract, Louisiana law instructs the Court to examine all of the circumstances surrounding a particular case, including the fair market value for goods or the reasonable value for services, taking into account the actual cost, general overhead, and a reasonable profit. *See Biedenharn v. Culp,* 39,680–CA (La.App. 2 Cir. 8/26/05); 911 So.2d 313, 318. Therefore, to determine whether an uninsured patient was charged an unreasonable rate in breach of an open price term contract, a court would have to receive evidence regarding each purported class member and the services and procedures the patient received at Ochsner. These personalized examinations necessarily destroy any notion of class predominance.

Because individual issues substantially predominate, the plaintiffs have failed to carry their burden. The Court is not persuaded that a class-wide trial of this breach of contract issue is proper under the Rule.

### b. *Breach of Duty of Good Faith and Fair Dealing*

■■■ This claim depends upon the same circumstances as the breaches of contract discussed above. Whether Ochsner has breached its duty of good faith and fair dealing, for all the reasons already noted, requires individualized determinations. This is very different from *Allapattah Servs., Inc. v. Exxon Corp.,* 333 F.3d 1248 (11th Cir.2003), where the court did find that a breach of the duty of good faith was appropriate for class-wide resolution. *See* 333 F.3d at 1261. In that case, Exxon had "purported to reduce the price of wholesale gas for all dealers." *Id.* The contention was that it failed to keep this promise. *See id.* at 1252. But, all of the dealers were in the same position, because Exxon was accused of overcharging them all by the same amount per gallon of gas. Here, none of the plaintiffs are in the same position. The prices they should have been charged are elusive and demand individualized determinations.

### c. *Louisiana Unfair Trade Practices and Consumer Protection Law*

The Louisiana Unfair Trade Practices Act does not create a class action model. *See Hamilton v. United Healthcare of La., Inc.,* 310 F.3d 385, 393 (5th Cir.2002). It has been improperly asserted in this lawsuit.

### d. *Unjust Enrichment*

This claim also involves individualized issues. In order to prove unjust enrichment, the plaintiffs must prove an enrichment, an impoverishment, a connection between the two, an absence of justification for them, and the absence of the availability of other remedy at law. *See JCD Mktg. v. Bass Hotels & Resorts, Inc.,* 812 So.2d 834, 842 (La.Ct.App.2002). The plaintiffs fail to offer any suggestion as to how they will prove impoverishment on a class-wide basis.

### e. *Damages*

Finally, even if common issues predominated as to any of the asserted claims, the intensely individualized damages inquiries that are compelled would counsel against certifying the class. Admittedly, individualized damages often do not obstruct class certification. *See Smilow,* 323 F.3d at 40; *Allapattah,* 333 F.3d at 1261. However, "[t]here are also extreme cases in which computation of each individual's damages will be so complex, fact-specific, and difficult that the burden on the court system would be simply intolerable." *Klay,* 382 F.3d at 1260. Like *Klay,* this is not a case where all of the plaintiffs were harmed in the same way; unlike *Allapattah,* they have not been uniformly wronged. Except by individualized inquiry, plaintiff by plaintiff, there is no way to determine which of the plaintiffs were overcharged or by how much. *See id.* at 1265–66.

### IV.

Aside from Maldonado's pending court case, the plaintiffs fulfill the requirements of Rule 23(a). It is on the shoals of Rule 23(b) that they founder. The injunction they seek lacks the requisite specificity, and does not sufficiently predominate over monetary relief. Further, the plaintiffs' standing to seek the injunction is questionable. And, finally, individualized issues predominate in every claim, and the novelty of the third party breach of contract claim makes it especially ill-suited for class action disposition.

Accordingly, the plaintiffs' motion for class certification is DENIED.