United States Court of Appeals
Fifth Circuit

**F I L E D**

July 19, 2007

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 06-30573

_____

EILEEN MALDONADO; DARRYL SOIGNET, SR.; and
CAROL VERLANDER EISWIRTH, on Behalf of Themselves
and All Others Similarly Situated,

Plaintiffs-Appellants,

versus

OCHSNER CLINIC FOUNDATION,

Defendant-Appellee.

On Appeal from the United States District Court
for the Eastern District of Louisiana, New Orleans Division
No. 2:04-CV-2635

Before JONES, Chief Judge, and BENAVIDES and STEWART, Circuit
Judges.

EDITH H. JONES, Chief Judge:

Three appellants seek to represent a class of uninsured patients who received treatment from Appellee Ochsner Clinic Foundation ("Ochsner") during a period of at least ten years. The district court denied class certification. Finding no reversible error of fact or law in the court's careful and thorough consideration of this case, we affirm. See Maldonado v. Ochsner, 237 F.R.D. 145 (E.D. La. 2006). Our opinion highlights the essential grounds for affirmance.

## I.  BACKGROUND

Appellants received medical treatment from Ochsner, a non-profit corporation receiving tax exemptions under 26 U.S.C. § 501(c)(3) and LA. REV. STAT. § 47:287:501, at a time in which they were uninsured.  They were then billed Ochsner's standardized "chargemaster"[1] rates for their care.  Because Ochsner offers discounts from the standardized rates to patients with private insurance plans, Medicare, or Medicaid, Appellants claim that the undiscounted charges are unreasonable.

Appellants sued Ochsner and the American Hospital Association ("AHA") in state court, alleging numerous state law causes of action, including breach of contract.  Appellants allege, for instance, that by charging unreasonable rates, Ochsner violated the contract entered into between Ochsner and the state of Louisiana when Ochsner accepted tax exemptions as a charitable organization.  Appellants further contend that Ochsner violated articles 2053 and 2055 of the Louisiana Civil Code, which require charges in open price contracts to be equitable.  See Grimaldi Plumbing & Heating Co. v. Doucette, 414 So. 2d 832, 833 (La. App. 1982).

The defendants removed the case to federal court, where AHA was voluntarily dismissed.  Appellants then sought class certification under Federal Rules of Civil Procedure 23(b)(2) or

---

[1]  The "chargemaster" is an exhaustive and detailed price list for each of the thousands of services and items provided by Ochsner.

(3). The proposed class would be composed of: "all persons who received any form of health care treatment and were charged an undiscounted amount for the services at Ochsner from September 1, 1993, through the date of commencement of class notice or entry of judgment and who were uninsured at the time of treatment." After a hearing and briefing, the district court denied Appellants' motion for class certification. This court subsequently granted Appellants' petition for permission to appeal. See FED. R. CIV. P. 23(f).

## II. DISCUSSION

This court reviews a district court's denial of class certification for abuse of discretion. Bell Atl. Corp. v. AT&T Corp., 339 F.3d 294, 301 (5th Cir. 2003). "Implicit in this deferential standard is a recognition of the essentially factual basis of the certification inquiry and of the district court's inherent power to manage and control pending litigation." In re Monumental Life Ins. Co., 365 F.3d 408, 414 (5th Cir. 2004)(quoting Allison v. Citgo Petroleum Corp., 151 F.3d 402, 408 (5th Cir. 1998)). We review de novo whether the district court applied the correct legal standards. Id.

To obtain class certification, parties must satisfy Rule 23(a)'s four threshold requirements, as well as the requirements of

Rule 23(b)(1), (2), or (3).  See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 613-14, 117 S. Ct. 2231, 2245 (1997).  The party seeking class certification bears the burden of establishing that Rule 23 is appropriate.  O'Sullivan v. Countrywide Home Loans, Inc., 319 F.3d 732, 737-38 (5th Cir. 2003).  The district court must "conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class."  Id. at 738 (internal quotation marks omitted).

## A.  Rule 23(a)

Rule 23(a) requires initially that the proposed class representatives demonstrate numerosity, commonality, typicality, and adequacy of representation.  FED. R. CIV. P. 23(a).  The district court found that Appellants generally satisfied this burden, see Maldonado, 237 F.R.D. at 148-49, and Ochsner focuses its appeal on Rule 23(b)'s requirements.[2]  We will assume arguendo that Appellants meet the Rule 23(a) requirements.  See Allison, 151 F.3d at 411 n.2.

## B.  Rule 23(b)(2)

Class certification under Rule 23(b)(2) is appropriate if the requirements of 23(a) are satisfied and:

> the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

---

[2]    We need not review the district court's finding that Maldonado is not a "typical" member or an adequate representative of the proposed class.

FED. R. CIV. P. 23(b)(2). To qualify for class-wide injunctive relief, class members must have been harmed in essentially the same way, and injunctive relief must predominate over monetary damage claims. Bolin v. Sears, Roebuck & Co., 231 F.3d 970, 975 (5th Cir. 2000). Additionally, the injunctive relief sought must be specific. FED. R. CIV. P. 65(d); see also Ala. Nursing Home Ass'n v. Harris, 617 F.2d 385, 387-88 (5th Cir. 1980).

Appellants cannot satisfy these standards. In addition to monetary damages, Appellants seek an injunction requiring Ochsner, in part, to provide them with "mutually affordable health care" and to cease and desist charging them a higher amount than that charged to insured patients. See Maldonado, 237 F.R.D. at 149-50. They have failed, however, to identify any way to determine what a reasonable or "mutually affordable" rate is for the wide variety of medical services offered by Ochsner.

The difficulty in specifying exactly what Appellants seek from an injunction highlights the fact that individualized issues here overwhelm class cohesiveness. See Allison, 151 F.3d at 414. The amount patients were charged and the amount that is "reasonable" for the services they received is necessarily an individual inquiry that will depend on the specific circumstances of each class member, the time frame in which care was provided, and both Ochsner's and other hospitals' costs at that time. See Howard v. Willis-Knighton Med. Ctr., 924 So. 2d 1245, 1263 (La. App. 2006)("reasonableness of charges inquiry requires individual

5

considerations that may include . . . the patient's financial status, the actual hospital services rendered, their customary value, and the amount of a recovery from a third party"). Other variables exist. The discount from the chargemaster rate paid by Ochsner's insured patients varies widely depending on the insurance provider and the particular procedure involved.[3] Similarly, the amount paid by the class members themselves varies significantly, as Ochsner offered numerous discounts to uninsured patients.[4] In fact, the vast majority of uninsured patients paid <u>nothing</u>,[5] making it unclear what they would gain from an injunction. Appellants are unable to explain how a court could define or enforce meaningful injunctive relief.

Rule 23(b)(2) certification is also inappropriate when the majority of the class does not face future harm. <u>See</u> <u>Bolin</u>, 231 F.3d at 978. Before suit was filed, Ochsner instituted an automatic thirty-five percent discount to uninsured patients, on top of the numerous other discounts already provided to uninsured patients. An injunction prohibiting Ochsner from charging the

---

[3]     This is not a case where Ochsner charges one "insured" rate and one "uninsured" rate. <u>Cf.</u> <u>Monumental</u>, 365 F.3d at 412 (insurance company charged black policyholders a higher premium than white policyholders). There is no set charge to which Appellants can point to as being the "reasonable" fee.

[4]     Among these are "prompt pay" discounts, charity care considerations, discounts provided during the collection process, service discounts for dissatisfied patients, and discounts pertaining to particular treatments.

[5]     Approximately eighty-three percent of the over 39,000 uninsured patients treated by Ochsner during the proposed ten-year class period, including Maldonado, paid nothing for their treatment. Many of the remaining seventeen percent did not pay the full amount of the charges.

"full" chargemaster rate in the future would be meaningless, while an injunction requiring Ochsner to afford the discount that it has instituted serves no purpose. This situation leaves monetary claims for retrospective damages predominant in the case. Therefore, the "declaratory relief [Appellants] seek serves only to facilitate the award of damages," and Rule 23(b)(2) certification is improper.[6] Id.

## C. Rule 23(b)(3)

To gain class certification under Rule 23(b)(3), a proposed class must satisfy Rule 23(a), and "[c]ommon questions must 'predominate over any questions affecting only individual members'[,] and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'" Amchem, 521 U.S. at 615, 117 S. Ct. at 2246 (quoting FED. R. CIV. P. 23(b)(3)). The predominance inquiry is "more demanding than the commonality requirement of Rule 23(a)" and requires courts "to consider how a trial on the merits would be conducted if a class were certified." Bell Atl., 339 F.3d at 301, 302 (internal quotation marks omitted). Additionally, the superiority analysis "requires an understanding of the relevant

---

[6]    Pointedly, the named Plaintiffs are not at risk for future harm. Since she initially received treatment, Maldonado returned to Ochsner, and, despite receiving the thirty-five percent discount, has again paid nothing. Soignet has received Medicare coverage since the filing of the suit, and Eiswirth has switched to another hospital due to dissatisfaction with her Ochsner doctor.

7

claims, defenses, facts, and substantive law presented in the case." Allison, 151 F.3d at 419.

This case cannot pass muster under the Rule 23(b)(3) criteria, as Appellants present no sensible way to resolve the dispute on a class-wide basis. The district court fully explained these problems. We begin by acknowledging that class-wide breaches of state law are alleged and raise some "common" issues of law and fact. Suffice it to emphasize here, however, that given the state court's dictate that the reasonableness of medical fees depends on multiple factors, including the services rendered, patient's financial status, and customary fee for similar services, see Howard, 924 So. 2d at 1263, it is unlikely Appellants could ever demonstrate that the chargemaster rates are unreasonable. Moreover, the court cannot simply require Ochsner to refund to uninsureds the difference between what they paid, if anything, and what insured patients paid[7] because, as Appellants admit, insured patients paid a wide variety of discounts from the chargemaster rates depending on the individual contracts and the specific procedures involved in their care.[8] At this level, there is not one charge for insured patients and one charge for uninsured patients, but an array of charges tailored to each patient's

---

[7] Notably, all patients are charged the same rate, regardless of insured or uninsured status. What Appellants take issue with is that insurance companies, as well as Medicare and Medicaid, generally are not expected to pay the full chargemaster rate.

[8] See supra Section II(B).

treatment. In addition, the percentage of the chargemaster rate paid by an individual insurance company may vary from procedure to procedure. The fact-specific rather than class-oriented nature of the claims thus predominates not only at the plaintiffs' level, since two patients' care and financial circumstances are hardly ever comparable,[9] but also in determining a "reasonable" charge for each service from among the melange of third-party payer discounts.[10] Both the district court here and a Florida district court that recently rejected a similar class action persuasively concluded that neither predominance nor superiority are satisfied in this type of case. See Colomar v. Mercy Hospital, Inc., No. 05-22409, 2007 WL 1784118, at *8-11 (S.D. Fla. April 11, 2007); Maldonado, 237 F.R.D. at 152-55.

### III. CONCLUSION

For the foregoing reasons, Appellants have not satisfied the requirements of either Rule 23(b)(2) or (b)(3). The district court properly denied class certification.

**AFFIRMED.**

---

[9] See Howard, 924 So.2d at 1263.

[10] To avoid the latter difficulty, Appellants suggest that a "reasonable rate" consists of a weighted average of the amounts paid by insurance companies, Medicare, and Medicaid. Under this approach, contrary to common sense, approximately half of the insurers would have negotiated an "unreasonable" rate. This proposal also ignores that the court would still need to calculate this average amount for each of the countless number of procedures and combination of procedures class members received. Similarly, Appellants' emphasis on the thirty-five percent discount Ochsner now gives uninsured patients is unavailing. The fact that Ochsner has voluntarily chosen to give patients a discount, perhaps in a desire to receive some compensation for its services, in no way proves that it was legally obliged to give the across-the-board fee reduction.

9