Barbara COLOMAR, on behalf of
herself and others similarly
situated, Plaintiff,

v.

MERCY HOSPITAL, INC., Defendant.

No. 05–22409–CIV.

United States District Court,
S.D. Florida.

April 11, 2007.

Order Denying Reconsideration
May 23, 2007.

Bryan Anthony Vroon, Vroon & Crongeyer, Atlanta, GA, Caryn Becker, Kelly Dermo-

dy, Richard Heimann, Lieff Cabraser Heimann & Bernstein, San Francisco, CA, Dewitt M. Lovelace, Lovelace Law Firm, Destin, FL, Don Barrett, Barrett Law Offices, Lexington, MS, Joseph E. Bartel, Sarasota, FL, Sidney A. Backstrom, Scruggs Law Firm PA, Oxford, MS, Theodore Jon Leopold, Ricci Leopold, Palm Beach Gardens, FL, for Plaintiff.

Alan Richard Poppe, Laura Ganoza, Buchanan Ingersoll, Christina Maria Ceballos-Levy, Robert Donald Wike Landon, III, Thomas H. Seymour, Kenny Nachwalter Seymour Arnold Critchlow & Spector, Lewis Warren Fishman, Miami, FL, Steven E. Bizar, Buchanan Ingersoll, Philadelphia, PA, for Defendant.

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

SEITZ, District Judge.

THIS CAUSE is before the Court on Plaintiff Barbara Colomar's Motion for Class Certification ("Motion") [DE–136] under Fed. R.Civ.P. 23(a), (b)(2) and (b)(3). Plaintiff's Motion asks the Court to certify a class of all uninsured patients who, like Plaintiff, received medical care at Defendant Mercy Hospital, Inc. ("Mercy") since July 19, 1999, six years prior to the filing of the Complaint. Plaintiff alleges that Mercy charged her and the proposed class of uninsured patients an unfairly high price for the Medical services they received from Mercy. Plaintiff claims that these unfair prices constitute a breach of contract and a violation of Florida's Deceptive and Unfair Trade Practices Act, § 501.201, Fla. Stat., *et seq.* ("FDUTPA"). Plaintiff moves to certify two types of classes, one under Rule 23(b)(2) seeking injunctive and declaratory relief (the "Injunctive Class") and/or one under Rule 23(b)(3)

seeking monetary damages (the "Damages Class").

Having considered the Motion, the response and reply thereto,[1] the applicable case law and the pertinent record, the Court finds that Plaintiff has not met her burden of establishing the requirements of Rule 23 needed to certify the proposed class. Although Plaintiff's Motion is inadequate in several respects, its chief weakness is that Plaintiff's claims—which are based on the reasonableness of the charges in her particular case—are so fact intensive that individual issues predominate over the common ones defeating certification of the Damages Class under Rule 23(b)(3). Likewise, the reasonableness of Plaintiff's particular bill does not support declaratory or injunctive relief on behalf of a class as a whole. Therefore, certification of the Injunctive Class under Rule 23(b)(2) is improper. Accordingly, for the reasons set forth herein, Plaintiff's Motion for Class Certification is denied.

## I. BACKGROUND

Plaintiff was a patient at Mercy Hospital between March 5–6, 2003. *See* Second Amended Complaint ("SAC") [DE–47] ¶¶ 5, 41–42. She came to Mercy due to shortness of breath after being exposed to pesticides in her home. *Id.* Plaintiff had a chest x-ray, ventilation/perfusion lung scan and an EKG; she was treated with steroids and oxygen, and given respiratory therapy. SAC ¶¶ 5, 42. After Plaintiff was discharged from the hospital, she received a bill from Mercy totaling $12,863.00. SAC ¶ 43. That bill is the source of this dispute.

■ At the time of her admission to Mercy, Plaintiff was uninsured and did not qualify for Medicaid or other assistance programs. SAC ¶¶ 5, 41. Prior to receiving any treatment or services from Mercy, Plaintiff signed an "Authorization and Guarantee" form (the

1. After she filed her reply brief, Plaintiff submitted a notice of supplemental authority [DE–151] directing the Court's attention to the newly minted, unreported order granting a motion for class certification under Missouri law in *Quinn v. BJC Health Systems,* Case No. 22052–0821A (Mo.Cir. Ct, Mar. 2, 2007). The filing of this notice spawned a response from Mercy [DE–152] and a reply from Plaintiff [DE–156]. The response and

reply were filed without leave of Court in violation of S.D. Fla. L.R. 7.1.C (authorizing only an opposing memorandum of law and a reply, and declaring that "[n]o further or additional memoranda of law shall be filed without prior leave of Court.") and therefore these two unauthorized filings shall be stricken from the record and were not considered by the Court.

"contract") in which she agreed to pay for the treatment and services Mercy was to provide. Importantly, the contract makes no reference to the services Plaintiff would need or the prices she would be charged. *See* SAC ¶ 66; Ex. A. As the Court has previously ruled, when the price term in a contract for services is undefined, Florida law requires the price to be reasonable. *See* DE–41 p. 6–7 (Supplemental Order); *Payne v. Humana Hosp. Orange Park*, 661 So.2d 1239 (Fla. 1st DCA 1995) (per curiam).

Plaintiff alleges that Mercy breached the contract because the bill she received for $12,863.00 is unreasonably high for the services rendered. Plaintiff claims that the rate Mercy charged her was unreasonable because it greatly exceeded the rate Mercy charged to those with insurance or government benefits, because the price greatly exceeded the prices charged by other hospitals and because the price bears no rational relationship to Mercy's actual costs. *See* SAC ¶¶ 30–32, 43–45.

In addition to the breach of contract claim, Plaintiff alleges that Mercy's conduct of grossly inflating the rates charged to her and other uninsured persons violates the FDUTPA because such charging conduct is unfair in violation of the statute. SAC ¶ 71. The Court has already held that Plaintiff's allegations are sufficient to state claims and to survive a Rule 12(b)(6) motion to dismiss. *See* DE–41(Supplemental Order); *see also Colomar v. Mercy Hosp., Inc.*, 461 F.Supp.2d 1265 (S.D.Fla.2006).

Plaintiff now moves to certify two types of classes using the following class definition:

All individuals (or their guardians or representatives) who, between July 19, 1999 and through the date of judgment, received any form of medical treatment at Mercy Hospital and were uninsured at the time of treatment.

Plf. Mot., DE–135, p. 1.[2] The Injunctive Class seeks a declaration that "Mercy's practice of charging unreasonable prices to Plaintiff and the Class for health care constitutes a breach of contract" and a permanent injunction barring Mercy "from continuing to overcharge plaintiff and the Class." Plf. Mem. at 13. The Damages Class seeks damages in the form of monetary recovery for overpayments of unreasonable charges.

## II. Class Certification Standard

To certify the proposed class, Plaintiff bears the burden of satisfying all four requirements of Fed.R.Civ.P. 23(a) as well as the requirements of either Fed.R.Civ.P. 23(b)(2) or (b)(3). *See Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1188 (11th Cir.2003); *Rutstein v. Avis Rent–A–Car Systems, Inc.*, 211 F.3d 1228, 1232 (11th Cir.2000). Failure to satisfy any one of the Rule 23(a) factors, or any of the Rule 23(b) factors, precludes class certification. *Valley Drug*, 350 F.3d at 1188 (citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615–18, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)).

Rule 23(a) requires Plaintiff to demonstrate that: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a).[3] If Plaintiff can meet her burden if establishing the Rule 23(a) factors, then she must satisfy the requirements of either Rule 23(b)(2) or 23(b)(3).

Certification of the Damages Class under Rule 23(b)(3) requires Plaintiff to establish that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and effi-

---

2. "Excluded from the Class is Defendant, any entity in which Defendant has a controlling interest, and any officers or directors of Defendant, the legal representatives, heirs, successors, and assigns of Defendant, and any judicial officer assigned to this matter and his or her immediate family." Plf. Mot., p. 1.

3. These four requirements are commonly referred to as the numerosity, commonality, typicality and adequacy factors. *See Prado–Steiman v. Bush*, 221 F.3d 1266, 1278 (11th Cir.2000). For convenience, the Court will use these shorthand expressions throughout this opinion.

cient adjudication of the controversy." Fed. R.Civ.P. 23(b)(3). Certification of the Injunctive Class under Rule 23(b)(2) requires Plaintiff to show that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2).

Plaintiff also must have standing in order the represent the class. *Id.* at 1188; *Prado–Steiman v. Bush,* 221 F.3d 1266, 1279 (11th Cir.2000).[4] In addition, Rule 23 implicitly requires that "the class sought to be represented must be adequately defined and clearly ascertainable." *Adair v. Johnston,* 221 F.R.D. 573, 577 (M.D.Ala.2004) (quoting *De-Bremaecker v. Short,* 433 F.2d 733, 734 (5th Cir.1970) (*per curiam* )); *see also Neumont v. Monroe Co., Fla.,* 198 F.R.D. 554, 556–57 (S.D.Fla.2000).

District courts are invested with significant discretion in deciding whether to certify a class. *Klay v. Humana, Inc.,* 382 F.3d 1241, 1251 (11th Cir.2004). In exercising its discretion under Rule 23, a court may not pass on the merits of a case, only the procedural requirements for class certification. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Cooper v. Southern Co.,* 390 F.3d 695, 713 (11th Cir.2004). Nonetheless, it is within a court's discretion to consider the merits of the claims in order to determine whether the requirements of Rule 23 are satisfied. *See Heffner v. Blue Cross Blue Shield of Alabama, Inc.,* 443 F.3d 1330, 1337 (11th Cir. 2006); *Love v. Turlington,* 733 F.2d 1562, 1564 (11th Cir.1984). Furthermore, courts may consider any evidence submitted that bears on the question of certification. *See Cooper,* 390 F.3d at 713–14. With these principles in mind, the Court turns to the parties' arguments.

---

**4.** Although Defendant does not argue that Plaintiff lacks standing to sue, the Court independently finds that she does. Plaintiff alleges that Mercy charged her too much for its services when it was bound to charge a reasonable rate, that she has paid or will be forced to pay an unreasonable amount without Court intervention, and that the

## III. ANALYSIS

### A. Rule 23(a) Factors

#### 1. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." While there is no magic number of putative class members necessary to satisfy the numerosity standard, the Eleventh Circuit has indicated that more than forty class plaintiffs is generally enough to satisfy the rule. *See Cox v. Amer. Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir.1986). A plaintiff is not required to provide the exact size of the proposed class, only a reasonable estimate that the number is large enough to render joinder of the individual class members impracticable. *See Walco Invest., Inc. v. Thenen,* 168 F.R.D. 315, 324 (S.D.Fla.1996); *In re Disposable Contact Lens Antitrust Litig.,* 170 F.R.D. 524, 529 (M.D.Fla.1996).

Plaintiff identifies over 24,000 uninsured patients who were seen at Mercy during the proposed class period. *See* Plf. Mem., Ex. A (Supp.Int.1). The Court accepts, and Mercy does not dispute, that there were over 24,000 uninsured patients cared for at Mercy during the relevant time period. Joinder of each of these individuals (or even a small fraction thereof) would be highly impracticable. Mercy argues, however, that Plaintiff's list grossly overstates the number of class members because it contains *all uninsured patients,* regardless of whether they paid all of their bill or whether they received some sort of discount or write-off under Mercy's charity care policies.

It is undisputed that Mercy offers discounts and/or write-offs to at least some of its uninsured patients. *See* Def. Statement of Facts ("SOF") [DE–143, Ex. A] ¶¶ 9, 14–17. Therefore, not all of the 24,000 uninsured individuals identified will belong in the class. Some of the individuals in that group

---

Court can either refund her for the amount overpaid or declare the reasonable price and relieve Plaintiff of the obligation to pay any more than the reasonable amount. *See Bennett v. Spear,* 520 U.S. 154, 167, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997).

undoubtedly received discounts or write-offs, meaning that they were not forced to pay the full amount of the bill which is alleged to be unreasonable. Mercy argues that without some showing of which of the 24,000 had to pay the full amount of their bill, Plaintiff has failed to meet her burden of establishing that the number of class members would make joinder impracticable. The Court agrees. Plaintiff offers no means for rationally estimating which number of the total uninsureds are class members. Plaintiff cannot simply rely on the 24,000 figure and ask the Court to infer that a minimum number paid the full bill given the sheer size of the uninsured pool. The Court cannot do Plaintiff's work for her. Because she has not shown which uninsured patients paid the full bill, or given the Court some rational basis for inferring a large enough class, Plaintiff has not met her burden of proving numerosity.[5]

Mercy's concern is even more legitimate when looked at through the lens of class ascertainability. Plaintiff's class definition sweeps in more parties than are entitled to recovery because it fails to account for the uninsured patients that receive some form of charity care from Mercy. Again, based on this record the Court is in no position to determine how many received charity care and how many did not. While Plaintiff need not be exact, the burden is on her to make at least some minimal showing that a sufficient subset of the total uninsured pool paid the full bill, or at least an unreasonable portion thereof. Because the Court finds that Plaintiff has not made a convincing showing that the proposed class would be large enough to meet the numerosity requirement of Rule 23(a)(1), certification cannot be granted.[6]

### 2. Commonality

■ Rule 23(a)(2) requires that "there are questions of law or fact common to the class." This prerequisite does not mandate that all questions of law or fact are common; a single common question of law or fact is sufficient to satisfy the commonality requirement, as long as it affects all class members alike. *See In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 685 (S.D.Fla.2004); *Hammett v. Am. Bankers, Insur. Co.*, 203 F.R.D. 690, 694 (S.D.Fla.2001). "The threshold for commonality is not high." *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D.Fla.2003). In particular, where the defendant is alleged to have committed a common scheme of misconduct against the class, common questions of law or fact will usually exist. *Id.; see also Terazosin*, 220 F.R.D. at 685–86 (citing *Roper v. Consurve, Inc.*, 578 F.2d 1106, 1113 (5th Cir.1978)).

As the only common questions identified, Plaintiff states that "Mercy charges all [uninsured persons] full Chargemaster prices for healthcare," and that "resolution of the legality of Mercy's pricing practices, which are all standardized, will affect all class members." Plf. Mem. at 11. In response, Mercy points out that in fact not all uninsured patients pay the full Chargemaster rates because some of them get discounts and write-offs. *See* Def. SOF ¶¶ 9, 14–17. Based on the undisputed fact that at least some of the uninsureds in the proposed class received charity care write-offs or discounts, it is inescapable that not all of the class members share the commonality of being charged Mercy's full Chargemaster rate. Indeed, except for the fact that all Mercy's patients appear to have signed a contract for services with an open pricing term, all the facts going to the reasonableness of Mercy's charges will differ between the potential class plaintiffs based on the type of services rendered and the time period in which they were received.

Put differently, the legality—or ultimate reasonableness—of Mercy's charges can only be determined by looking at the specific bills in question and analyzing them against factors like the market rate for the same services at other hospitals, Mercy's internal

---

5. In her reply brief, Plaintiff states that Mercy's charity policy is *"ad hoc."* Plf. Reply at 2. This characterization raises more questions than it answers. If discounts and write-offs are truly *ad hoc* then there is even less hope of pinning down which uninsureds are in the class and which are not.

6. The Court has considered allowing Plaintiff an opportunity to amend her class definition or otherwise provide additional evidence to support her motion. However, given the fatal defects discussed later, amendment would be futile.

costs for those particular services, and the prices Mercy charged for those services to patients with health insurance or other benefits. None of the evidence underlying these factors will be the same for any two class members, unless they received the same services during a similar time frame. Therefore, at the level of specificity required to actually resolve the class claims, any commonality breaks down into an individualized inquiry. Simply put, the "legality" of Mercy's conduct vis-a-vis the potential class members is "common" only at a very high level of abstraction. As such, Plaintiff has failed to identify any common questions of law or fact as required by Rule 23(a)(2).[7]

### 3. Typicality

■ The third prerequisite for class certification is that the representative plaintiff's claims "are typical of the claims ... of the class" Fed.R.Civ.P. 23(a)(3). The focus of typicality is whether the class representative's interest is aligned enough with the proposed class members to stand in their shoes for purposes of the litigation and bind them in a judgment on the merits. *General Tel. Co. v. Falcon,* 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (citation omitted); *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984). Thus, typicality is often met when, in proving her case, the representative plaintiff establishes the elements needed to prove the class members' case. *See Brooks v. Southern Bell Tel. & Tel. Co.,* 133 F.R.D. 54, 58 (S.D.Fla.1990); *see also Hillis v. Equifax Consumer Serv., Inc.,* 237 F.R.D. 491, 499 (N.D.Ga.2006) (citation omitted) ("Typicality cannot be satisfied when a named plaintiff who proved his own claim would not necessarily have proved anybody else's claim.").

Plaintiff asserts that her claims are typical of the class because all claims "arise out of Mercy's uniform Consent to Care and Treatment forms which contain payment guarantee and an implied term that charges will be reasonable, and Mercy's uniform policy regarding the charging of uninsured patients."

Plf. Mem. at 12. These generalizations do not meet the standard for establishing that Plaintiff and the unnamed class members share the same interests or suffer the same injury. Nor do they establish that in proving her own claim Plaintiff will prove a substantial aspect of the class member's claims. Indeed, Plaintiff's broad, conclusory statements contain almost no analysis of typicality whatsoever.

That the contract between Mercy and Plaintiff contains the same undefined price term as the other class members does not automatically make the Plaintiff's and the class members' interests the same. Granted, Plaintiff and the proposed class members share a broad interest in paying only reasonable charges. But the similarities end there. In order to establish her *prima facie* case, Plaintiff will need to prove that Mercy's charges for its respiratory services are unreasonable in light of (1) Mercy's costs for those respiratory services, (2) what Mercy charges other patients—including those with benefits or insurance—for those same respiratory services, and (3) what other hospitals charge for like respiratory services. Other uninsured patients in the class will be required to undertake a similar analysis, but that analysis will entail entirely different services and, hence, entirely different facts. Proving her case that Mercy's respiratory services are unreasonable will not prove anything about the reasonableness of Mercy's cardiac services, to take one example. Indeed, even with regard to respiratory services exactly like those Plaintiff received, the analysis will differ across different time periods. Whether her charges were unreasonable in 2003—when she was a patient at Mercy—will prove little about whether Mercy's prices for respiratory services in 1999 were reasonable. This is not the case where Plaintiff can simply show that her charges were unreasonable and therefore establish Mercy's liability to each class member. Therefore, her claims are not typical of the class.

---

7. As with the issue of numerosity, the Court has considered whether there are any other common questions of fact that Plaintiff might be able to plead and whether, if given the opportunity,

Plaintiff could satisfy this low threshold. Again, though, given the other problems with certification, the Court concludes that such an effort would ultimately prove futile.

Plaintiff's suggestion that she can prove all claims with reference to data describing Mercy's *average* charging conduct is misguided. Using Mercy's *average* charges for its services to determine the reasonableness of a *specific* charge does not comport with this Court's previous orders discussing the appropriate analysis. The relevant data for analyzing each class members' claims would be the actual cost to Mercy of the particular services, the actual charges it imposed for the same services during a similar time frame, and the charges other area hospitals imposed for the same services. Mercy's average charges for all services in comparison to other hospitals, or its average percentage charge over the amount charged to Medicare, does little to prove that any particular medical charge was unreasonable under the applicable test.

In addition to the foregoing flaw, Mercy argues that unique defenses undermine typicality. Typicality may be destroyed by the existence of unique defenses that would preoccupy the defendant to the detriment of the interests of absent class members. *See Ross v. Bank South, N.A.*, 837 F.2d 980, 990–91, *vacated on other grounds*, 848 F.2d 1132, 1133 (11th Cir.1988); *Brooks*, 133 F.R.D. at 58; *see also* 5 Moore's Federal Practice § 23.24[5]. Mercy believes that Plaintiff's agreement to resolve her account with Mercy by consenting to an interest free payment plan of $100 per month creates unique defenses to the claim that Mercy's prices are unreasonably high. As support for its argument, Mercy refers the Court to its Motion to Dismiss [DE–134] in which Defendant first raised similar arguments. Given that the Court rejected these defenses before, the Court does not credit them for purposes of defeating typicality. Nonetheless, even without unique defenses, the lack of a sufficient nexus between Plaintiff's claims and those of the class destroys typicality and renders the proposed class uncertifiable.

### 4. Adequacy

The fourth element of the Rule 23(a) analysis requires that the "representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). This requirement "involves questions [1] of whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation, and [2] of whether plaintiffs have interests antagonistic to those of the rest of the class." *Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir.1985); *accord Valley Drug*, 350 F.3d at 1189.

### a. Adequacy of Class Counsel

■ Although Plaintiff offers very little in the way of support for her view that counsel are qualified and experienced in the issues raised in this litigation, the Court believes that counsels' efforts thus far in the case confirm that they are committed to its vigorous prosecution, and that they have the skill and resources to fulfill the job. In this Court's experience, it is typical for counsel to submit affidavits and/or professional vitae showing their substantive experience and track record in complex class action litigation. While that is absent here, the Court takes note that counsel have litigated the same or similar class claims on behalf of patients in Florida and elsewhere. *See Urquhart v. Manatee Memorial Hosp.*, Slip Copy, 2007 WL 781738 (M.D.Fla., March 13, 2007) (motion to dismiss similar claims of unreasonable hospital charges); *Maldonado v. Ochsner*, 237 F.R.D. 145 (E.D.La.2006) (class certification on behalf of uninsured patients).[8] Given counsel's satisfactory conduct in this case so far, and the fact that Defendant lodges no objections, the Court is satisfied that counsel are adequate as required by Rule 23(a)(4).

### b. Adequacy of Plaintiff as Class Representative

The adequacy of the Plaintiff as class representative "encompasses two separate inquires: (1) whether any substantial conflicts of interest exist between [her] and the class; and (2) whether [she] will adequately prose-

---

**8.** The Lieff Cabraser firm, and Sidney A. Backstrom of the Scruggs Law Firm represented plaintiff in *Maldonado*. Bryan A. Vroon and John W. Crongeyer of the Vroon & Crongeyer firm, Theodore J. Leopold of the Ricci Leopold firm, and Sidney A. Backstrom represented plaintiff in *Urquhart*.

cute the action." *Valley Drug*, 350 F.3d at 1189. Mercy argues that Plaintiff is an inadequate class representative for two reasons. First, it argues that a conflict of interest exists between Plaintiff and the class, and among various class members. Second, Mercy claims that Plaintiff would be an inadequate representative because of her and her husbands' poor health, and because she has exhibited a lack of involvement in, and understanding of, the case. Neither argument has merit.

As to Mercy's class conflicts argument, it is well settled that "[a] class cannot be certified when its members have opposing interests or when it consists of members who benefit from the same acts alleged to be harmful to other members of the class." *Pickett*, 209 F.3d at 1280 (citation omitted); *see also Valley Drug*, 350 F.3d at 1189. To defeat class certification, the conflict must be "a fundamental one, going to the specific issues in controversy." *Pickett*, 209 F.3d at 1280. "[A] class conflict can be established in one of two ways: (1) where the record shows hard evidence of an actual disagreement or conflict; or (2) where the class is such that the court can simply imply that a realistic possibility of antagonism exists." *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 688 (S.D.Fla.2004). A class conflict precludes a finding that the proponent of class certification has satisfied Rule 23(a)(4). *See Valley Drug*, 350 F.3d at 1189.

Mercy claims that Plaintiff is conflicted due to potential legal actions she might have against the manufacturer of the pesticide that allegedly caused her respiratory distress. This conflict is purely hypothetical at this stage, however, because Mercy has identified no pending action related to the disputed bill from Mercy or the injuries that the bill arose from. More importantly, even if Plaintiff did sue some third party to recover for her medical expenses, she would have no personal interest in seeing these costs inflated because invariably the medical provider would seek a lien on the funds—she would not be entitled keep them.

The argument that some class members benefitted from the challenged conduct fairs no better at creating a certification-defeating conflict. Indeed, Mercy's argument mischaracterizes the nature of Plaintiff's complaint. Plaintiff contends that Mercy's Chargemaster rates—or its "sticker prices"—for medical services are grossly inflated and unfair. She is not complaining that Mercy is unfair in its application of charity care to reduce those allegedly unfair sticker prices. Plaintiff's complaint does not challenge Mercy's charity care at all, and the fact that some potential class plaintiffs received charity does not render Mercy's prices reasonable. This fact is underscored by the relief Plaintiff requests—she seeks not a fair application of charity care policies but a fair charge in the first place. If that relief were granted, patients that received charity care would be in no worse position than they are in now.

Mercy's second argument—that Plaintiff lacks the diligence or fortitude to adequately represent the class—does not fly. As to her diligence, Mercy faults Plaintiff for not knowing that CHE was originally sued in this case. This overlooks the fact that CHE was sued under an agency theory (and did not treat Plaintiff) and was ultimately dismissed on a Rule 12(b)(6) motion, so it is not surprising that Plaintiff would be unaware of CHE's role in the dispute. Further, Plaintiff's inability to recall reviewing the complaints or other discovery-related documents filed in this case is not a grave admission, given that lawyers typically draft and execute such legal documents after consultation with the client. Importantly, Plaintiff did not admit that any of the declarations in the documents were untrue.

The only troubling issues Mercy raises are the delays in completing Plaintiff's and her husband's depositions, and the allegations that Plaintiff's poor health would interfere with her further participation in the case. The depositions initially had to be continued as a result of Plaintiff's counsel's overzealousness in advising his client not to answer questions, rather than Plaintiff's own dilatory motives. And the subsequent delays appear to have arisen from Plaintiff's husband's ill health, not Plaintiff's. While her husband's health issues may not make Plaintiff the best possible class representative, after reviewing all of the evidence submitted the Court is not

convinced that these issues render her completely inadequate.

### B. Federal Rule 23(b)(3)

In addition to the prerequisites of Rule 23(a), class certification of the Damages Class under Rule 23(b)(3) requires Plaintiff to show that "[1] questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and [2] that class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

#### 1. Predominance

■ In order for common questions of law or fact to predominate over individualized questions "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof." *Rutstein*, 211 F.3d at 1233. As the Eleventh Circuit has recently explained:

> Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to ... relief. Where, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized legal proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b).

*Klay*, 382 F.3d at 1255 (citations and internal quotations omitted). To evaluate predominance, the Court must "examine the causes of action asserted in the complaint on behalf of the putative class." *Rutstein*, 211 F.3d at 1234. Here, at their core, Plaintiff's breach of contract and FDUTPA claims turn exclusively on the question of the reasonableness of Mercy's charges. Reasonableness in this context involves a per patient analysis of the cost of each particular medical service(s) in question, along with a comparison of the

rates Mercy charged other patients with benefits as well as the rates charged by other area hospitals for similar services during the same time frame. *See Colomar*, 461 F.Supp.2d at 1269. With its focus on the particularized type of treatment, and the attendant internal costs and comparative rates for similar services, this case-specific analysis clearly predominates over any other common elements that would apply to the class as a whole.

Applying this analysis to Plaintiff's claim, the Court will have to dissect Mercy's charges for respiratory care and consider them against Mercy's actual costs to determine how Mercy arrived at its rates and what profit margin it receives for these services.[9] In addition, the Court will need to consider the charges Mercy imposed for these same services during the same time frame on other respiratory patients at Mercy (i.e., those with health benefits or insurance), along with a comparison of the charges for similar services at comparable hospitals. When all is said and done, even if Plaintiff's evidence proves that the respiratory care charges are unreasonable, a class member claiming that Mercy's cardiac services are unreasonable would be no further along in proving his case based on the proof used to satisfy Plaintiff's burden of establishing her claim. Further complicating matters, even a class plaintiff challenging Mercy's respiratory services will not benefit from Plaintiff's proof, if the respiratory services were rendered much earlier or much later in the class period, because the costs and other comparative data will change over time.

It is no answer to say, as Plaintiff does, that "[a]ll class members were subjected to Mercy's pricing practices here." Plf. Reply at 8. This verges on tautology because of course any patient at Mercy was subject to Mercy's pricing practices. The real question is whether the particular prices for the particular services in issue were unreasonable. That question can only be resolved by reference to the particular facts surrounding that particular set of services. Contrary to Plain-

---

**9.** Little of this information is in the record, so the Court can only discuss the analysis hypothetically. Plaintiff's expert never discusses Mercy's res-

piratory services, but rather generalizes about Mercy's average charges. *See* DE–137 (Declaration of Robb Cohen)

tiff's suggestion, the question of reasonableness of any particular bill cannot be resolved in a global manner by reference to Mercy's average charges. While it may be true, for example, that Mercy charged patients with insurance or governmental benefits at rates that *average* roughly 60–70% below Chargemaster rates, that fact does not establish that Mercy's Chargemaster rates for respiratory services are inflated by 60–70%. It certainly does not justify a conclusion that each of Mercy's many services is inflated by 60–70%. Similarly, the fact that Mercy's average Chargemaster rates are four-and-a-half times the rates charged to Medicare does little to show how excessive any particular set of services might be. The average does not even establish the reasonableness of Plaintiff's respiratory services, let alone the thousands of other items on Mercy's Chargemaster. The use of averages is simply too blunt an instrument to accurately or fairly adjudicate these important issues.

The only authority Plaintiff offers to support her view that predominance is met is *Quinn v. BJC Health Systems,* No. 22052–821A (Mo.Cir.Ct., March 2, 2007). In *Quinn* the trial court certified a class of uninsured patients alleging that their hospital charges were unreasonable. Significantly, the court found that common issues predominated over individual ones because the claims of unreasonableness could all be proved solely by reference to the amounts the hospital charged to its patients who had government benefits or insurance. The court explained that

> Plaintiffs intend to use the rates for services as they appear in the applicable chargemaster and compare them to the 'price usually and customarily paid.' Plaintiffs define this usual and customary amount as that which is paid by the vast majority of the hospital's patients through insurance or government programs.

*See* DE–151, Ex. A, p. 23. This may be an acceptable way to measure the reasonableness of medical charges under Missouri law, but the Florida courts have expressly rejected this analysis. *See Hillsborough County Hosp. Auth. v. Fernandez,* 664 So.2d 1071, 1072 (Fla. 2d DCA 1995) (differential pricing is improper measure of reasonableness); *see also* DE–41 ("Supplemental Order"). Thus, *Quinn* is not persuasive authority for this reason.

By contrast, in *Maldonado v. Ochsner,* 237 F.R.D. 145, 151–52, 154 (E.D.La.2006), the district court rejected the same arguments similar plaintiffs advanced seeking to certify a class of uninsured patients alleging unreasonable medical rates. The court observed that "to determine whether a plaintiff was charged an unreasonable amount, the Court would have to determine what qualifies as a reasonable amount for each of the thousands of different procedures," none of which was related in any meaningful way to the named plaintiffs' cases. *Id.* at 151. The court also noted that any interpretation of the form contract signed by all plaintiffs—like the one signed in this case—did nothing to advance the class-wide case because any "interpretation of the form contract requires the Court to read in a reasonable price as to each patient's contract. A reasonable price for medical services depends on the services and procedures provided." *Id.* at 154. As in Florida, "Louisiana law instructs the Court to examine all of the circumstances surrounding a particular case, including the fair market value for goods or the reasonable value for services, taking into account the actual cost, general overhead, and a reasonable profit.... These personalized examinations necessarily destroy any notion of class predominance." *Id.* This Court agrees with the *Maldonado* court's analysis and conclusion. For these same reasons, Plaintiff has not demonstrated that common issues will predominate over individual issues in this case.

### 2. Superiority

■ In determining whether a class action is superior to other available methods of adjudicating a plaintiff's claims, a court should consider:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating

the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3). Plaintiff states that no class plaintiffs have an interest in prosecuting separate actions because they all allege the same harm resulting from the same conduct. Plaintiff also notes that thousands of individual claims would be inefficient and could result in inconsistent judgments. Moreover, given the lack of resources of the individual class members, as evidenced by their lack of insurance, individual plaintiffs would be deterred from bringing suit.

Plaintiff's argument overlooks, or underestimates, the individualized nature of the reasonableness inquiry and the significant manageability problems attendant to that analysis. *See Perez v. Metabolife,* 218 F.R.D. 262, 273 (S.D.Fla.2003) ("Severe manageability problems are a prime consideration that can defeat a claim of superiority."). In effect, Plaintiff expects the Court to scrutinize each of Mercy's thousands of Chargemaster rates over a six year period, determine which are unreasonable, and by how much, and then apply those determinations to each plaintiff in the proposed class. Properly conducted, such an endeavor would be herculean in scope.

Plaintiff's concern over inconsistent judgments is also misplaced. In fact, adjudicating the reasonableness of all Mercy's myriad charges over the last six years in one case involving only respiratory services creates a greater likelihood of inconsistency than adjudicating individual cases. Lumping all of Mercy's services together and using averages to measure their reasonableness creates efficiency at the expense of consistency or fairness. Also, given the individualized nature of the reasonableness analysis, those plaintiffs with stronger claims—based on a greater disparity between costs and charges, for example—would surely favor a separate suit rather than commingling their actions together with less favorable claims based on more reasonable prices. Additionally, Plaintiffs inability to estimate reliably the number of plaintiffs in the proposed class (as opposed to all uninsured patients at Mercy) suggests

that at this point the fear of hosts of individual cases may be premature.

Furthermore, Plaintiff's concern that individual plaintiffs could not sue for want of resources to hire a lawyer is exaggerated, given that the FDUTPA provides for the recovery of attorneys' fees. *See* § 501.2105, Fla. Stat.; *Andrews v. AT & T,* 95 F.3d 1014, 1025 (11th Cir.1996); *Hillis,* 237 F.R.D. at 507 (class not superior to other methods of adjudication where statutory basis for claim allowed recovery of attorneys' fees). Individual plaintiffs routinely bring claims for very modest sums under the Fair Labor Standards Act, for example, owing no doubt to the award of reasonable fees and costs under the statute. Plaintiff has not explained why her claims are any different. For all these reasons, class action status is not the superior method of adjudicating the challenge to the reasonableness of Mercy's medical charges.

### C. Federal Rule 23(b)(2)

Before certifying the Injunctive Class under Rule 23(b)(2), the Court "must determine (1) whether Defendant has acted on grounds generally applicable to the class as a whole, and if so, (2) whether declaratory or final injunctive relief is the appropriate and primary remedy[ ]." *Jones v. American General Life and Acc. Ins. Co.,* 213 F.R.D. 689, 698 (S.D.Ga.2002) (citing *In re Managed Care Litig.,* 209 F.R.D. 678 (S.D.Fla.2002) and 7A Wright, Miller, & Kane, FEDERAL PRACTICE & PROCEDURE § 1775 (2d ed.1986)). In addition, where, as here, plaintiffs seek money damages in addition to equitable relief, Rule 23(b)(2) certification is only appropriate if the money damages are "incidental to the requested injunctive or declaratory relief." *In re Consol. Non–Filing Ins. Fee Litigation,* 195 F.R.D. 684, 692 (M.D.Ala. 2000) (citing *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 415 (5th Cir.1998)). Money damages are "incidental" only when class members would be "automatically entitled" to them once class-wide liability is established. *Id.* (citing *Allison,* 151 F.3d at 415; *Swanson v. Mid Am, Inc.,* 186 F.R.D. 665, 669 (M.D.Fla.1999)).

### (1) Generally Applicable Grounds

Mercy has not acted on grounds generally applicable to the class as a whole with respect to its medical charges. For one thing, as explained above, some of Mercy's uninsured patients in the proposed class received charity care discounts or write-offs and were not forced to pay the full amount of Mercy's Chargemaster rates. Even among those patients, like Plaintiff, who received no charity care, the charges they were billed were for different services which necessarily derived from different underlying cost considerations. Plaintiff has not shown that Mercy's charging conduct was the result of any systematic policy that would tie together the reasonableness of all charges. *See Maldonado,* 237 F.R.D. at 151 (denying certification under Rule 23(b)(2) and noting that "plaintiffs do not suggest that [the hospital] is systematically raising its prices for uninsured patients by a set percentage."). Other than her vague reference to Mercy's "uniform policy applied to the Class as a whole," Plaintiff never points to a uniform price, fee or rate applied to the whole class. This fact distinguishes this case from the authority Plaintiff cites in support of her motion, which are all cases where the defendants applied a uniform policy, such as an undifferentiated fee, to all their customers. *See In re Consol. Non–Filing Ins. Fee Litigation,* 195 F.R.D. 684, 692 (M.D.Ala.2000) (defendant imposed a uniform $14 non-filing insurance fee); *Davis v. Southern Bell Tel. & Tel. Co.,* No. 89–2839, 1993 WL 593999 (S.D.Fla., Dec.23, 1993) (defendant imposed a $0.55 per month fee for services). It does not help Plaintiff that Mercy uniformly used a standardized contract with an open pricing term because the all-important details going to the reasonableness of the charges are anything but standardized or uniform, and without such a showing class certification under Rule 23(b)(2) is unwarranted.

### (2) Injunctive or Declaratory Relief

Certification under Rule 23(b)(2) is also unavailable because neither declaratory nor final injunctive relief would be an appropriate class-wide remedy. The Court cannot determine the reasonableness of the full scope of Mercy's services merely by looking at the evidence needed to resolve Plaintiff's claims about respiratory services. As such, any declaratory relief available to Plaintiff would have little or no application to the class members' cases. Furthermore, even if the Court granted Plaintiff her requested class-wide injunctive relief, namely an order enjoining Mercy "from continuing to overcharge plaintiff and the Class," such relief is not specific, clear or enforceable enough to comport with Fed.R.Civ.P. 65(d). *See Maldonado,* 237 F.R.D. at 149–50 (denying certification under Rule 23(b)(2) for lack of specificity in requested injunctive relief).

### (3) Damages are not Incidental

Finally, even if Plaintiff could pass the first two hurdles to Rule 23(b)(2) certification, the monetary relief she seeks is not merely incidental to the declaratory or injunctive relief requested. Damages for overpayment of non-uniform charges are simply not a group injury entitling the class to a group remedy. As the *Maldonado* court explained, on facts striking similar to those before this Court, "[l]iability for incidental damages should not require additional hearings to resolve the disparate merits of each individual's case." 237 F.R.D. at 151 (quoting *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 415 (5th Cir. 1998)). Because a finding of class-wide liability in this case would not "automatically entitle" class plaintiffs to some fixed, uniform damages recovery, but would instead still require an individual analysis of what their total charges from Mercy were, what portion of those charges were unreasonable, and what amount plaintiffs overpaid, damages are not incidental and therefore Rule 23(b)(2) certification is inappropriate.

### IV. Conclusion

For the forgoing reasons, it is hereby ORDERED that Plaintiff Barbara Colomar's Motion for Class Certification [DE–136] is DENIED; and

IT IS FURTHER ORDERED that Defendant's Response [DE–152] and Plaintiff's Reply [DE–153] shall be STRICKEN from the record as unauthorized filings.

## ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION

THIS MATTER is before the Court on Plaintiff's Motion for Reconsideration of Order on Class Certification [DE–180]. The order in question (the "Class Order") denied Plaintiff's motion for class certification for failure to meet the requirements of Fed. R.Civ.P. 23(a), 23(b)(2) and 23(b)(3).[1] *See* DE–179. For the reasons set forth below, and in the previous orders in this case, Plaintiff's motion for reconsideration is denied.

■■■■■ Reconsideration "is an extraordinary remedy to be employed sparingly." *Bautista v. Cruise Ships Catering and Service Int'l, N.V.,* 350 F.Supp.2d 987, 992 (S.D.Fla.2004) (citation omitted). A motion to reconsider will not be granted absent an intervening change in the law, availability of newly discovered evidence, or to correct clear error or prevent manifest injustice. *Id.* Plaintiff's motion does not rely on newly discovered evidence or intervening changes in the law. Rather, at best, Plaintiff argues that the Court committed clear error in applying Rule 23 to the facts of this case, and that the resulting denial of the motion for class certification is a manifest injustice. However, to the extent Plaintiff merely reargues points previously considered and rejected by the Court, or tries to raise new arguments and point to new evidence that could have been raised earlier, this is insufficient grounds to satisfy the clear error or manifest injustice standard for granting a motion for reconsideration. *See Bautista,* 350 F.Supp.2d at 992; *see also Michael Linet, Inc. v. Village of Wellington, Fla.,* 408 F.3d 757, 763 (11th Cir.2005) (a party cannot use a motion to reconsider "to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment.") (citing *Stone v. Wall,* 135 F.3d 1438, 1442 (11th Cir.1998) and 11 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2810.1 (2d ed.1995)). Furthermore, mere

disagreement with the Court's conclusions is not enough. *See Linet,* 408 F.3d at 763 (affirming denial of reconsideration where plaintiff merely "disagreed with the district court's treatment of certain facts and its legal conclusions" in the earlier order under review).

Plaintiff's motion fails to meet the narrow standard for reconsideration. As a preliminary matter, Plaintiff asks to amend her class definition. The Court *sua sponte* entertained this option in its Class Order, seeing that Plaintiff might be able to shore up certain deficiencies with the numerosity and commonality factors of Rule 23(a). Were those the only road blocks to certification, the Court would likely have amended the definition or at least given Plaintiff the opportunity to do so. However, faced with the insuperable problems of establishing typicality, predominance, and superiority, and all the 23(b)(2) factors, which cannot be cured through modification of the class definition, it would have been, and continues to be, wasted effort to dwell on an amended class definition.

As another threshold matter, the Court notes that Plaintiff's motion does not even address every basis for the denial of certification. The Court denied certification of the proposed Rule 23(b)(3) damages class on multiple grounds. Notably, Plaintiff does not address the Court's conclusion that a class action is not a superior means of adjudicating the claims of the proposed class. Therefore, even if Plaintiff could meet her burden with respect to predominance and the other Rule 23(a) factors, certification would still be denied. Likewise, with respect to the proposed Rule 23(b)(2) injunctive class, Plaintiff never challenges the Court's conclusion that monetary damages are not incidental relief. Therefore, even if Plaintiff could convince the Court that it erred with regard to the other elements required to certify an

---

1. Specifically, the Court ruled that Plaintiff failed to satisfy the requirements of numerosity, commonality and typicality set forth in Rule 23(a), and the predominance and superiority requirements of Rule 23(b)(3). With respect to Rule 23(b)(2), the Court found that Plaintiff failed to

establish that Defendant acted on grounds generally applicable to the class as a whole, failed to show that class-wide injunctive relief was appropriate, and failed to show that damages were merely incidental to the injunctive remedy.

injunctive class, the Court's Class Order would still stand.[2]

All the foregoing aside, Plaintiff's motion to reconsider fails to overcome two of the Court's chief concerns with this case as a class action: (1) Plaintiff's failure to show that the reasonableness of any particular class member's hospital bill can be determined solely by reference to Mercy's average charge and cost data for its services, and (2) Plaintiff's failure to show how proof that her bill was unreasonable would establish, or contribute to establishing, that all of the class members' bills were unreasonable as well. As to the first point, to be clear, the Court did not rule that statistical evidence, including evidence of averages, categorically has no place in class adjudication. What the Court found was that proof of average charges and costs for all services has little or no bearing on whether any particular service, for example Mr. Colomar's respiratory services, were unreasonable. Using average charge data to address individual claims of reasonableness does not foster accuracy or fairness. As to the second point, even if Plaintiff proffered appropriate evidence to establish that Mercy overcharged Plaintiff for her respiratory care, that evidence would add nothing to the individualized analysis of whether the myriad of other services offered by Mercy over the entire class period were reasonable. Failure to overcome these hurdles, in conjunction with the other deficiencies identified in the Class Order, compels the denial of Plaintiff's motion. Therefore, for the reasons stated here and in the Court's previous orders, it is hereby

ORDERED that Plaintiff's Motion for Reconsideration [DE–180] is DENIED.

---

**2.** In any event, in defense of her attempt to certify an injunctive class, Plaintiff merely rehashes the same conclusory arguments already rejected by the Court. That a declaratory judgment "might contain a formula or other common method for determining the lawful amount owed" is simply too speculative to certify. And with regard to the Court's earlier observation that a declaratory judgment might be proper in this case, the Court was referring to Plaintiff's own case, not the class as a whole.