# IN THE COURT OF APPEALS OF IOWA

No. 13-1034
Filed March 11, 2015

**PORSCHIA BUTTS, CRISTINA TREVINO,**
**STACEY RAMSEY, MARSHELLE WILIAMS,**
**and the Class of Others Similarly Situated,**
     Plaintiffs-Appellants,

**vs.**

**IOWA HEALTH SYSTEM and CENTRAL**
**IOWA HOSPITAL CORP.,**
     Defendants-Appellees.
_____

Appeal from the Iowa District Court for Polk County, Robert A. Hutchison, Judge.

Plaintiffs appeal from the order denying class certification and granting summary judgment in favor of defendants. **AFFIRMED.**

Jeffrey M. Lipman of Lipman Law Firm, P.C., Clive, Mark Harding of Harding Law Office, Des Moines, and Don M. Downing and Kaitlin A. Bridges of Gray, Ritter & Graham, P.C., St. Louis, Missouri, for appellants.

Stacie M. Codr and Steven Scharnberg of Finley, Alt, Smith, Scharnberg, Craig, Hilmes & Gaffney, P.C., Des Moines, for appellees.

Heard by Doyle, P.J., and Bower and McDonald, JJ.

**MCDONALD, J.**

The four named plaintiffs filed this class action suit against Iowa Health System and Central Iowa Hospital Corporation. The gravamen of the amended class petition is the defendants allegedly implemented a "two-tier pricing scheme" in which the defendants charged uninsured individuals unreasonable rates for medical care when compared to insured individuals. The plaintiffs sought class certification, which the district court denied. The defendants moved for summary judgment on all claims, which the district court granted. The plaintiffs timely filed this appeal.

I.

The following facts are supported by the class certification and summary judgment records. Iowa Health System (hereinafter "IHS")[1] is a regional, non-profit health care delivery system consisting of twelve hospitals in ten Iowa cities. IHS is not an operating entity for direct delivery of health care services; health care services are provided through IHS subsidiaries. The subsidiaries that operate hospitals are known as "Senior Affiliates." Central Iowa Hospital Corporation is a Senior Affiliate that operates Iowa Methodist Medical Center (hereinafter "IMMC"), Iowa Lutheran Hospital, and Methodist West Hospital, all in the Des Moines metropolitan area.

IHS provides centralized billing services for its Senior Affiliates, but it does not set the rates for the services provided. Each IHS hospital maintains a hospital-specific computer file called a "Chargemaster." The Chargemaster

---

[1] IHS advises it now does business as UnityPoint Health.

includes rate information for the specific hospital's procedures, services, supplies, and medications. The record reflects that rate information is available to patients upon request and that many people call for rate information. All patients are billed based upon the hospital-specific Chargemaster rates.

At the time of admission to one of the hospitals at issue, all patients sign a contract agreeing to pay "in accordance with the Hospital's regular rates and terms." The contract also provides:

> If I lack insurance coverage for these services, or if I am otherwise unable to pay for these services, I agree to immediately inform the Hospital so that I may be considered for financial assistance from the Hospital or for referral to other agencies to explore the availability of other medical and hospital benefits.

While all patients are *charged* based upon the hospital-specific Chargemaster rates, not all patients *pay* the same amount for the same services. Government programs, such as Medicare or Medicaid, set the amount they will pay for any particular charge. Similarly, many health insurance carriers negotiate discounts for the amount they will pay for any particular charge. In addition, patients who apply and qualify for financial assistance may receive charity discounts up to 100% of the charge. From the years 2000 through 2010, the total charges to self-pay, or uninsured patients, of IHS's Des Moines area hospitals was $202 million dollars. Of this amount, uninsured patients actually paid only $17 million of the $202 million charged for services due to charitable discounts and write-offs of uncollectable debt.

The named plaintiffs are four uninsured patients who presented at IMMC years apart with different medical conditions for which they received different treatment. All four signed the standard contract at admission and were charged

based upon the Chargemaster rates in effect for services rendered at IMMC at the time of treatment. Cristina Trevino came to the emergency room at IMMC on December 20, 2006, because of injuries to her back, shoulder, and foot sustained in a motor vehicle accident. She also received services on December 26. Her medical services included x-rays and intravenous therapy. She was billed a total of $3808.08. Her bill was paid in full. Porschia Butts went to the emergency room at IMMC on November 12, 2007, because of injuries to her hand sustained in a motor vehicle accident. Her medical services included x-rays. Her total charges were $1097.23. Her bill was paid in full. Marshelle Williams was treated in the emergency room at IMMC for injures to her head, neck, and back suffered in a fall on January 4, 2009. As a result of her injuries, a head CAT scan was performed. She went to the emergency room at IMMC again on October 16, 2009, complaining of chest pain after a motor vehicle accident. The medical services she received during her second visit included an EKG, lab work, and x-rays. Her total charges amounted to $4627.04. No payments have been made on her account. Stacey Ramsey was hospitalized at IMMC on September 4, 2009, for an appendectomy. She was billed a total of $22,299.68 for services. Payments have been made and continue to be made on her account. Based on the contract provision for requesting financial assistance, Ramsey applied for assistance, but did not provide all the information necessary to process her request.

The four named plaintiffs filed suit against the defendants. Plaintiffs asserted four counts against the defendants: (1) breach of contract; (2) unjust

enrichment; (3) declarative judgment and equitable relief; and (4) and violation of Iowa's Consumer Frauds Act, Iowa Code chapter 714H. The nature of the plaintiffs' contract claim requires some explication. The plaintiffs argue the contract to pay the "Hospital's regular rates and terms" is indefinite or ambiguous because it contains an open price term. Because the contract has an open price term, plaintiffs argue, they are required to pay only a reasonable rate for the services provided. The plaintiffs further contend a single reasonable rate can be judicially determined on a class basis. Plaintiffs sought to certify the following putative class: "all Iowa residents from 2000 to the present who were: (1) billed (or against whom collection efforts were made) for any form of Hospital Services by, or on behalf of, any hospital or facility owned, operated or managed by Defendants, and (2) uninsured at the time the Hospital Services were provided."[2] Plaintiffs defined Hospital Services as "all goods and services including all charges for hospital rooms, equipment, drugs, devices, and all other goods and services typically provided to patients in a hospital." The defendants resisted the motion for class certification and filed a motion for summary judgment as to all counts.

The district court denied the plaintiffs' motion for class certification, holding the plaintiffs failed to prove the prerequisites for class certification. The district court concluded the plaintiffs failed to prove the putative class is so numerous

---

[2] At hearing on class certification, the plaintiffs' attorneys limited the class in some respects, e.g., excluding judges and court personnel in the Iowa District Court for Polk County, the Iowa Court of Appeals, and the Iowa Supreme Court. The limitations do not appear material to the resolution of the class certification issue. In their main appeal brief, the plaintiffs define the class as defined in this opinion.

that joinder of all members is impracticable. *See* Iowa R. Civ. P. 1.261(1). The district court explained the putative class was overbroad because numerous patients falling within the putative class would not be appropriate class members, including those who discharged their obligations through bankruptcy, those whose charges already had been adjudicated reasonable, and those who received financial assistance. The district court also concluded the plaintiffs failed to prove questions of law or fact common to the class. *See* Iowa R. Civ. P. 1.261(2). Specifically, the court held plaintiffs' claim for breach of contract involved individualized determinations of intent and individualized determinations of what constituted a "reasonable price" as "[e]very plaintiff would have a different claim, involving different services, at different medical facilities, at different points in time." Plaintiffs simply failed to prove a common, and acceptable, methodology to determine "reasonable price." The district court also concluded the plaintiffs failed to prove adjudication with respect to individual members of the class would be dispositive of interests of other members. Finally, the district court completed its class certification analysis by concluding that certifying a class (1) presents a greater likelihood of inconsistency than adjudicating individual cases, (2) poses unusual difficulties, and (3) is impractical and inefficient.

The district court granted summary judgment for defendants on the plaintiffs' claims for breach of contract, unjust enrichment, and consumer fraud. In resolving the plaintiffs' contract claim, the court concluded the contract contained a definite price term and was not ambiguous. The court granted

summary judgment with respect to the plaintiffs' unjust enrichment claim on the ground the claim would not lie where, as here, there was a contract between the parties. Finally, with respect to the consumer fraud claim, the district court concluded chapter 714H did not apply to the defendants and the claim otherwise failed on the merits.

## II.

We review a district court's class certification ruling for an abuse of discretion. *See Kragnes v. City of Des Moines*, 810 N.W.2d 492, 498 (Iowa 2012); *see also Vos v. Farm Bur. Life Ins. Co.*, 667 N.W.2d 36, 44 (Iowa 2003); *Stone v. Pirelli Armstrong Tire Corp.*, 497 N.W.2d 843, 845 (Iowa 1993). The district court abuses its discretion only where its grounds for deciding the class certification issue are clearly unreasonable. *See Varner v. Schwan's Sales Enters., Inc.*, 433 N.W.2d 304, 305 (Iowa 1988).

Iowa Rules of Civil Procedure 1.261 through 1.263 set forth the standards governing the class certification process. These rules "closely resemble Federal Rule of Civil Procedure 23," and the court "may rely on federal authorities construing similar provisions of Federal Rule of Civil Procedure 23." *Vos*, 667 N.W.2d at 44. It is the plaintiffs' obligation to define the class for which class certification is sought. *See Brownell v. State Farm Mut. Ins. Co.*, 757 F. Supp. 526, 544 (E.D. Pa. 1991) (stating the plaintiffs' burden is "adequately and accurately to define an appropriate class"); *see also Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 685 (D. Colo. 1997) (rejecting overbroad definition, stating "it is not for me to revise the proposed class definition for plaintiffs"). It is

also the plaintiffs' burden to prove certification of the putative class is both permissible and proper. *Stone v. Pirelli Armstrong Tire Corp.*, 497 N.W.2d 843, 846 (Iowa 1993).

Class certification is permissible only where: (1) "The class is so numerous or so constituted that joinder of all members, whether or not otherwise required or permitted, is impracticable"; and (2) "There is a question of law or fact common to the class." Iowa R. Civ. P. 1.261. Class certification is proper only if: (1) the requirements of rule 1.261 have been satisfied, (2) a class action should be permitted for the fair and efficient adjudication of the controversy, and (3) the representative parties will fairly and adequately protect the interests of the class. *See* Iowa R. Civ. P. 1.262(2). Rule 1.263(1) lists thirteen non-exclusive factors for the court to consider "[i]n determining whether the class action should be permitted for the fair and efficient adjudication of the controversy." Iowa R. Civ. P. 1.263(a)-(m). The court "need not assign weight to any of the factors listed" and "need not make written findings as to each factor." *Luitenegger v. Conseco Fin. Servicing Corp.*, 671 N.W.2d 425, 437 (Iowa 2003). "Rather, the district court need only weigh and consider the factors and come to a reasoned conclusion as to whether a class action should be permitted for a fair adjudication of the controversy." *Id.*

In its thorough and well-reasoned order regarding class certification, the district court identified numerous legal and evidentiary deficiencies in the plaintiffs' request for class certification. In reviewing the record and the parties' arguments on appeal, we conclude the district court conducted the proper

analysis under the rules of civil procedure and did not abuse its discretion in denying the plaintiffs' motion for class certification. We need not rehash each of the district court's findings and conclusions or the appellants' arguments regarding the same; a failure of proof on any one of the prerequisite elements in rule 1.262(2) is fatal to the request for class certification. *See* Iowa R. Civ. P. 1.262(2); *Stone*, 497 N.W.2d at 846. We focus on the prerequisite element of rule 1.261(2)—whether there is a question of law or fact common to the class— and also on the secondary issue whether the putative class would be manageable. *See* Iowa Rs. Civ. P. 1.261(2); 1.263(1)(f), (k).

The plaintiffs contend there are several questions common to the class: (1) whether defendants charged the plaintiffs "unreasonable charges . . . in breach of the contracts," (2) whether defendants have been unjustly enriched at the expense of class members, (3) whether defendants should be enjoined from their improper pricing practices, and (4) whether the defendants' pricing practices violate Iowa Code chapter 714H. The plaintiffs' framing of the common questions does little to demonstrate the putative class should be certified. First, the plaintiffs have framed the common questions at a level of abstraction so general as to be of no value to the court, essentially arguing that the common questions presented are whether the defendants are liable to the plaintiffs. If this were sufficient to establish a common question of law or fact, then any putative class would meet the requirement. Second, the plaintiffs focus on the wrong issue.

> What matters to class certification . . . is not the raising of common
> questions—even in droves—but, rather the capacity of a classwide

proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011).

We conclude the dissimilarities within the putative class prevent framing common questions of law or fact of sufficient specificity to generate answers apt to drive the resolution of the litigation on a class basis. For example, the plaintiffs contend that the contract each patient signs at admission is ambiguous because it has an open price term. The plaintiffs contend the court will have to determine a reasonable rate. The plaintiffs further contend a reasonable rate can be determined on a class basis by averaging the price actually paid for services by insured patients. While this has some superficial appeal, the argument ultimately fails because there is no legal basis for concluding the average amount paid for all services establishes a reasonable price for the particular service provided to any proposed class member. *See Pexa v. Auto Owners Ins. Co.*, 686 N.W.2d 150, 156-57 (Iowa 2004) (noting the amount paid "is but one form of probative evidence" on the reasonable value of medical services—another being expert testimony). More important, the plaintiffs' formula does not appear probative of any question material to the resolution of any claim. For example, with respect to the named plaintiffs, the plaintiffs cannot answer a simple question: why is a judicial determination that the rate charged for Ramsey's appendectomy was or was not reasonable at all probative of whether the rate charged for Williams's CAT scan was or was not reasonable? We see no logical connection between the two. Any legally sound determination of the reasonableness of a particular

charge will necessarily depend on the individual facts and circumstances regarding each plaintiff's condition.

Further precluding class certification is the recognition that the reasonableness of the rates charged the putative class members is not only dependent upon the medical condition of the plaintiff, the types of services provided, the hospital at which the services were provided, and the point in time at which the services were provided, but also dependent upon a host of other variables, including, but not limited to, the hospital's attendant internal costs, the availability of medical care providers for the type of service rendered, the rates of substitute or similar services, and the rates of competitor's services. The defendants provided an affidavit from William Cleverley that discussed different methods hospitals use to determine and set reasonable charges, including the cost of the service to the hospital, the cost charged by competitors, the payor mix (percentage of uninsured, insured, and government program patients), and the profit needed to continue operating. Any legally sound determination of the reasonableness of a particular charge at a particular time will thus also depend on these individualized considerations.

Other courts have addressed the same class certification issue involving the same or similar claims as those advanced here. In *Colomar v. Mercy Hospital, Inc.*, 242 F.R.D. 671 (S.D. Fla. 2007), the court explained that determining the reasonableness of the charges, as desired by the plaintiffs, necessarily required an individualized determination of the value of the services provided. The *Colomar* court reasoned the reasonableness of charges

can only be determined by looking at the specific bills in question and analyzing them against factors like the market rate for the same services at other hospitals, Mercy's internal costs for those particular services, and the prices Mercy charged for those services to patients with health insurance or other benefits. None of the evidence underlying these factors will be the same for any two class members, unless they received the same services during a similar time frame. Therefore, at the level of specificity required to actually resolve the class claims, any commonality breaks down into an individualized inquiry.

*Colomar*, 242 F.R.D. at 677. The court then gave an example of attempting to apply a reasonableness analysis to multiple class members:

When all is said and done, even if Plaintiff's evidence proves that the respiratory care charges are unreasonable, a class member claiming that Mercy's cardiac services are unreasonable would be no further along in proving his case based on the proof used to satisfy Plaintiff's burden of establishing her claim. Further complicating matters, even a class plaintiff challenging Mercy's respiratory services will not benefit from Plaintiff's proof, if the respiratory services were rendered much earlier or much later in the class period, because the costs and other comparative data will change over time.

*Id.* at 680; *accord Maldonado v. Oshner Clinic Found.*, 493 F.3d 521, 524-26 (5th Cir. 2007) (affirming the district court's denial of class certification, concluding in part the plaintiffs failed to satisfy the requirement that common questions predominate over questions affecting individual members); *but see Quinn v. BJC Health Sys.*, NO. 22052-0821A, 2007 WL 7308622, at *27-28 (Mo. Cir. Ct. March 2, 2007) (finding common questions predominated over individual questions).

We hold the plaintiffs have failed to prove there is a question of law or fact common to the class, that class certification is thus not permissible, and the district court did not abuse its discretion in denying the plaintiffs' motion. According to the plaintiffs' theory of the case, the determination of the "reasonableness" of the charges lies at the heart of the four "common questions"

identified by the plaintiffs. Although the individual claims "need not be carbon copies of each other," there must be "generalized evidence which proves or disproves an element on a simultaneous, class-wide basis." *Vos*, 667 N.W.2d at 45 (citations omitted). The district court correctly determined that ascertaining the reasonableness of charges would have to be done on a case-by-case basis, "considering the patient, financial resources, financial assistance available to the patient, amount paid, internal costs of the services, the hospital rendering the services, the comparative data between that hospital and other regional facilities, and potentially many more unique individualized factors." No generalized evidence exists that would prove or disprove the reasonableness of the charges for the putative class members. The putative class members treated for different conditions, at different hospitals, at different times, and received different medical services for their respective individualized medical conditions. Class certification is thus not permissible.

We also conclude that even if class certification were permissible, it would not be proper. The management of the proposed class suit would pose unusual difficulties and would be impractical and inefficient, thereby rendering the class vehicle inappropriate. Under the plaintiffs' theory of the case, there is no logical or fair way to determine the reasonableness of the rate charged without holding an individualized hearing on the same. "Properly conducted, such an endeavor would be herculean in scope." *Colomar*, 242 F.R.D. at 682. The district court would have to account for numerous individualized facts, including the nature of the plaintiff's medical condition, the treatment provided, the place at which the

treatment was provided, the date of the treatment, whether the plaintiff applied for financial assistance, whether the charge was paid, whether the debt, if any, was discharged in bankruptcy, and whether there had been a judicial determination the charge was reasonable. The district court would be required to receive testimony, perhaps expert testimony, regarding the reasonableness of the particular charges for the particular services provided at the particular location at the particular time. In addition, this does not account for the counterclaims the defendants would be able to assert for unpaid claims. Any proposed class is simply not manageable, and the district court did not abuse its discretion in denying class certification.

## III.

We review a district court's grant of summary judgment for corrections of errors at law. *See Boelman v. Grinnell Mut. Reins. Co.*, 826 N.W.2d 494, 500 (Iowa 2013). Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3).

## A.

Plaintiffs contend the district court erred in granting summary judgment on their breach of contract claim. Under the contracts at issue, the plaintiffs agreed to pay for medical care according to the "Hospital's regular rates and terms." Plaintiffs argue the contract contains an open price term requiring the court to

supply a reasonable price. The plaintiffs contend this is a disputed issue of fact precluding summary judgment. In support of their position, the plaintiffs contend Iowa should follow the ruling in *Doe v. HCA Health Services of Tennessee, Inc.*, 46 S.W.3d 191, 197 (Tenn. 2001) (holding contract term "charges" in sentence "I am financially responsible to the hospital for charges not covered by this authorization" was indefinite). The plaintiffs also rely on *Quinn*, 2007 WL 7308622, at *18-19.

We conclude neither *Doe* nor *Quinn* are persuasive. Most courts have rejected the analysis or otherwise distinguished *Doe*. *See e.g.*, *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255 (3rd Cir. 2008) (declining to extend); *Banner Health v. Med. Sav. Ins. Co.*, 163 P.3d 1096 (Ariz. App. Div. 1 2007) (distinguishing); *Allen v. Clarian Health Partners, Inc.*, 980 N.E.2d 306 (Ind. 2012) (refusing to follow); *Holland v. Trinity Health Care Corp.*, 791 N.W.2d 724 (Mich. App. 2010) (distinguishing); *Atherton v. Tenet Healthcare Corp.*, No. 2005-UP-362, 2005 WL 7084013 (S.C. App. May 25, 2005) (same); *Nygaard v. Sioux Valley Hosps. & Health Sys.*, 731 N.W.2d 184 (S.D. 2007) (same). *Quinn* is a trial court order that is difficult to reconcile with a published Missouri appellate decision, *Freeman Health System v. Wass*, 124 S.W.3d 504 (Mo. App. S.D. 2004). Further, the *Quinn* case was never resolved on appeal because the parties settled the claim.

Like other courts, we also find *Doe* is readily distinguishable from this case. The rationale underlying *Doe* was that the contract at issue did not contain any reference to any other document or extrinsic fact. *See Doe*, 46 S.W.3d at 197 (acknowledging that while the charge master "could be used as a reference"

the particular contract at issue did not actually "contain a reference to some document, transaction or other extrinsic facts from which its meaning may be made clear"). In contrast, the contract at issue in this case makes explicit reference to "the Hospital's regular rates and terms." The overwhelming weight of authority holds this explicit reference to the hospital or facility's rates and terms sets a definite price term. *See, e.g.*, *DiCarlo*, 530 F.3d at 264 (finding "the price term was not in fact open, and that 'all charges' unambiguously can only refer to St. Mary's uniform charges set forth in its Chargemaster"); *Harrison v. Christus St. Patrick Hosp.*, 430 F. Supp. 2d. 591, 595 (W.D. La. 2006) (concluding "regular rates and terms" did not create open-ended contract); *Cox v. Athens Reg. Med. Ctr., Inc.*, 631 S.E.2d 792. 796-97 (Ga. App. 2006) (finding "in accordance with the rates and terms of the hospital" is unambiguous); *Allen*, 980 N.E.2d 306, 309-10 (Ind. 2012) (examining "guarantees payment of the account" and concluding "an offer [that] appears to be indefinite may be given precision by usage of trade or by course of dealing between the parties); *Holland*, 791 N.W.2d at 730 (finding "usual and customary charges" unambiguously referred to the Chargemaster charges); *Shelton v. Duke Univ. Health Sys., Inc.*, 633 S.E.2d 113, 115-16 (N.C. App. 2006) (finding "regular rates and terms" was "sufficiently definite" and implied the regular Chargemaster rates); *Nygaard*, 731 N.W.2d at 192 (recognizing "if the contract price is fixed and determinable from sources outside the written agreement, the price term is not open in the sense that it allows for some imputed, commercially reasonable price term"); *Woodruff v. Ft.*

*Sanders Sevier Med. Ctr.*, 2008 WL 14851 at *3 (Tenn. Ct. App. 2008) (concluding "facility rates and terms" was not indefinite).

The contract language at issue here, "regular rates and terms," is identical to that in *Harrison* and *Shelton*, and closely resembles the language in *Cox*, *Holland*, and *Woodruff*. As a general rule, where there is an agreement to pay for medical services in accord with the hospital's regular rates and terms, the contract is not indefinite. Because the contract language is not indefinite and the price is contracted for, the court need not supply a "reasonable" rate. *See Heninger & Heninger, P.C., v. Davenport Bank & Trust Co.*, 341 N.W.2d 43, 48 (Iowa 1983) ("In the absence of specification, a person who performs services pursuant to request is entitled to the reasonable value of the services."); *Fashion Fabrics of Iowa, Inc. v. Retail Investors Corp.*, 266 N.W.2d 22, 27 (Iowa 1978) ("Contractual obligations may arise from implication as well as from the express writing of the parties. A contract includes not only what is expressly stated but also what is necessarily to be implied from the language used; and terms which may clearly be implied from a consideration of the entire contract are as much a part thereof as though plainly written on its face."). Accordingly, the district court did not err in concluding that defendants were entitled to judgment as a matter of law on the plaintiffs' contract claim.

B.

On appeal, the plaintiffs do not advance any argument or cite any authority regarding unjust enrichment. The issue is deemed waived. *See* Iowa Rs. App. P. 6.903(2)(c) (requiring a statement of issues presented for review);

6.903(2)(g)(3) (requiring argument and citation to authority on an issue). In addition, the plaintiffs' claim for unjust enrichment fails because there is an express contract between the parties. *See Johnson v. Dodgen*, 451 N.W.2d 168, 175 (Iowa 1982).

C.

On appeal, plaintiffs do not present any argument or cite any authority regarding their third "claim" for equitable relief. The claim is deemed waived. *See* Iowa Rs. App. P. 6.903(2)(c); 6.903(2)(g)(3).

D.

Plaintiffs' consumer fraud claims fails because the Consumer Frauds Act is inapplicable, by its own terms, to the defendants and the services provided. *See* Iowa Code § 714H.4(1)(a) (excluding any merchandise offered or provided by a facility licensed under chapters 135B (hospitals), 135C (health care facilities), and 148 (physicians)). Although IHS is not a licensed facility under chapter 135B or chapter 135C, it does not offer or sell consumer merchandise, and is thus not subject to chapter 714.H. *See* Iowa Code § 714H.3 (covering activities "in connection with advertisement, sale, or lease of consumer merchandise"). The district court thus did not err in granting the defendants' motion for summary judgment.

IV.

This case is just one of many similar cases across the country asserting the same claim. As indicated above, the cases largely have been resolved the same way.

This case, and other similar cases being brought throughout the country, arise out of the anomalies which exist in the American system of providing health care. A court could not possibly determine what a "reasonable charge" for hospital services would be without wading into the entire structure of providing hospital care and the means of dealing with hospital solvency. These are subjects with which state and federal executives, legislatures, and regulatory agencies are wrestling and which are governed by numerous legislative acts and regulatory bodies. For a court to presume to address these problems would be rushing in where angels fear to tread. What Plaintiff is asking the Court to do here is, put simply, to solve the problems of the American health care system, problems that the political branches of both the federal and state governments and the efforts of the private sector have, thus far, been unable to resolve. Like other similar suits filed in other federal courts, this action seeks judicial intervention in a political morass.

*DiCarlo*, 530 F.3d at 264. For the foregoing reasons, we affirm the judgment of

the district court.

**AFFIRMED.**